Mr. Justice NELSON
 

 deliyered the opinion of the court.
 

 This is a writ of error to the Circuit Court of the United States for the northern district of New York. •
 

 The suit was brought against the defendants on a policy of insurance against fire, in the sum of $2,500, upon a paper-mill, machinery, and stock, of one R. K. Kounsler, of the State of Virginia, the ^property situate in that State. The defendants are incorporated under the laws of the State of New York, and the place of business at the village of Fort Plain, an interior town of that State. The policy and all interest under the game have been duly assigned to the plaintiff.
 

 There is no question in the case'upon the loss, or upon the preliminary proofs; the defence being placed exclusively upon a defect of authority in the defendants to issue the policy. The act of the Legislature of New York, passed April 10,1849, under which they were incorporated, provided, section 1, that-any number of persons, not less than thirteen, might associate and form an incorporated, company, among other things to
 
 *61
 
 make insurance on dwellings, houses, &c., agairst loss or damage by fire; section 3, that these persons should file in the office of the Secretary of the State a declaration, signed by them, expressing their intention to form a company for transacting the business of insurance, which declaration should comprise a copy of the charter proposed to be adoptecj by them, and requiring notice of their intention to be published in a newspaper a given number of weeks. Section 4 provides for opening books of subscription to the capital stock, and that in case the business of the company was to be conducted on the plan of mutual insurance, then to open books to receive propositions and enter into agreements in the manner afterwards specified; which- in substanfee is, that .the company shall' not commence business until agreements shall have been entered into for insurance, the premiums on which shall amount to one hundred thousand dollars, and notes have been received-in advance for the premiums on such-risks, payable at the end of or within twelve months from date, which notes .'shall be considered a part of the capital stock, and shall be deemed valid, negotiable, and collectable, for the purpose of paying losses or otherwise. Section 11, that the charter of-the company should be examined by the Attorney General of the State, and if found in accordance with the requirements of the act, and not inconsistent with the Constitution or laws of the State, he should certify the same to the Comptroller of the State; and thereupon the Comptroller should institute an examination to ascertain if the company had received, and had in its actual possession, the capital, premiums, &c., to the full extent required by the act; and upon.a certificate to this effect by the Comptroller, filed in the office of the Secretary of State, this officer should furnish the company with a certified' copy of the charter and certificates, which, upon being filed in the office of the clerk of the - county -in which the company is located, shall be its authority to commence business and issue policies.
 

 By section 10 it is made the duty of the corporators to declare iii the charter the mode and manner in which the corporate powers conferred by the general act are to be exercised; and ■ by section 12 the corporators, trustees, or directors, as the case
 
 *62
 
 may be,,shall have power to make such by-laws, not inconsist ent with, the Constitution or laws of the State, as may be deemed necessary for the government of its officers and the conduct of its affairs.
 

 By the fifth section of the charter formed under this general act, it is provided that the rights, powers, &c., conferred by law on the company, shall be vested in and exercised by a board of directors, to consist of thirteen persons, to be elected by persons holding the. policies of insurance in the company or their proxies, and one vote shall be allowed on every one Hundred dollars insured. The eighth section of the charter provides that the rates of insurance shall be fixed and regulated by the company; and premium notes therefor shall be received from, the insured, and shall be paid at such time or times and in such sum or sums as the company shall from time to time require; and any person applying for insurance, so electing, may pay
 
 a cash premium,
 
 in addition to a premium note, or a
 
 definite sum in money,
 
 to be .fixed by the company, in full of said insurance and in lieu of a premium note.
 

 The policy in question was issued on the payment of a cash, premium, under this eighth section of the charter, the insured paying a gross sum of fifty-six dollars and twenty-five cents for the insurance of his paper-mill and stock to the amount of $>2,500 for one year.
 

 The ground taken in the defence is, that, according to the general act under which the defendants were organized, they ’were empowered to make contracts and issue policies of insurance to such persons only as became members of the company by giving premium notes; and that the eighth section of the charter, providing for the payment of the premium in cash, was without authority, and the policy therefore void.
 

 It is stated in the plea upon which the question in the case ia raised, that from the time the company began business (August, 1850) till June, 1853, when it became insolvent, over two thousand policies were issued, founded upon premium notes, and over two thousand five hundred founded upon cash premiums ; and that the amount of forty-three thousand dollars was received by the company for policies iss ued upon cash premiums.
 
 *63
 
 The general act, conferring the power upon companies organized under it to make contracts of insurance against tire and issue policies, provides for a certain amount of capital, ($100,000,) secured by. preinium notes upon engagements of insurance entered into by the companies, as a condition to the right of commencing the business of insurance. This capital, thus obtained, is essential to a complete organization under the act; for, without it, the corporation is forbidden to enter upon the business of insurance.
 

 These preliminary engagements and the giving of premium notes were designed as an immediate security to persons who, confiding in the responsibility of the company, should make application for insurance on its going into operation.
 

 " The notes thus constituting capital are to be made payable at or within a year from their-date; they may be made payable, therefore, within the terms of the act, on demand, or at any short period; and they are- made negotiable and collectable for the payment of any losses which may accrue in the business of insurance or otherwise. And it has been held in the Court of Appeals, in New York, that they are collectable by'the company, irrespective of losses, or assessments to pay losses. (16 New York R., 310; 2 Smith R.)
 

 Now, although the general act provides for premium notes upon these preliminary engagements of insurance to be consummatéd on the organization of the company, and with' a view to capital upon which to begin the business of insurance, there is no provision to be foúnd in it prescribing the mode or manner in which premiums shall be paid or secured after th.e company has become organized and commenced operations. That, seems to have been left to be regulated in the charter formed under the act.-
 

 The provision pi’eseribing the giving of notes in advance for premiums, with a view to create capital, has no necessary relation to the subject of premiums to be received by the company after its organization, and in the course of conducting its ordinary business. ,The act had in view a different object in requiring the giving these notes, and provided specially for their disposition and use with reference thereto. They
 
 *64
 
 are made a part of the-capital stock of the company, and negotiable and collectable for the payment of losses or otherwise, and, as we have seen, collectable as such capital, irrespective of loss or assessment for losses; and as they may be made payable on demand, or at a short day, are convertible into money, according to the decision in the Court of Appeals of New York, immediately on the company’s becoming organized and ready for business.
 

 Even if this provision could be regarded as bearing upon the subject--of premiums after the organization of the company, it would furnish but feeble support -to the argument against cash premiums, the difference being' simply between cash and a note payable and collectable immediately. Accord-' ing to the act,.and construction given to it in the case referred to, these notes have no necessary existence after the organization of the company. They may then be converted into money. They seem to have been made necessary under this system oí insurance while the company was' in the process of organiza tion, by way of furnishing Nthe incipient amount of. capital required by the act. ■
 

 It is .argued, however, that the company, in question is a mutual insurance company, as declared by the act; that, ac-.' cording to this system, the insured must be a member of it, and that a person insured upon a cash premium, without- any further liability, cannot be a member.' ■ This argument is not well founded, either upon principle or authority. Admitting that the insured must be a member of the company, he is made so by the payment of the cash premium. The theory of a mutual insurance Company is, that' the premiums paid by each member for .the insurance of his property constitute a common" fund, devoted to the payment of any losses’ that may occur. Now, the cash premium may as well represent the insured in the common fund as the premium note; and this class of companies/ has been so long engaged in .the business of insurance, it may well be that they can determine, with 'sufficient- certainty for. all practical purposes, the just difference in the rates of premium between cash and notes. These mutáal companies, possessing -the authority contained in the eighth section’
 
 *65
 
 of this charter, namely, to take cash premiums , or premium, notes, are, at the present day, in operation in several of the State's, and it has never been supposed that the mutual principle has been thereby abrogated.
 

 3 Ohio R., 348, N. S.
 

 It has also been argued, that inasmuch as, the defendants have been organized upon the principle of a mutual insurance company, its business must be conducted, as it.respects the premiums to be received, according to the plan of mutual companies previously chartered in the State of New York. If the previous companies were required by their charters to receive premium notes, and-not cash, then'this requirement distinguishes them from the one before us. If their charters contained no such provision, then they were left, like the present one, to regulate the mode of .payment at discretion. Besides, < mutual companies upon both plans had been chartered by the Legislature of New York previous to the act of 1849, and hence.no inference can be drawn, as it respects the charters, of previous companies,, from the. unexpressed intent of the Legislature in this act, if otherwise admissible.
 

 The true answer, howéver, to. this argument, we think, is, ■ that in the absence of any reference to previous charters, by which the provisions of the samé might have been incorporated in the present one, the court must look to the law itself for the purpose of. expounding its provisions and ascertaining the intent of the Legislature. „
 

 The general act prescribed: the outlines of the system, arid all the conditions and guards that were deemed essential to the security of persons applying for insurance, leaving the details and interior regulations to be arranged'and determined by the ■company in their charter. Large powérs were conferred, in general terms, as in the 10th section, “to declare in the charters.” the mode and .manner in which the corporate powers' given under and by virtue of this act are to be exercised; ” and again; in the 12th section, the company “shall have' power to make such by-laws ” “a3 maybe deemed necessary for the government of its officers and the conduct of Its affairs.” And, besides these general powers, inasmuch as the company
 
 *66
 
 is incorporated for the express purpose of insurance of property against fire, in the absence of any prescribed mode of payment of premiums, the power to prescribe it by the company is necessarily implied'; otherwise, the object for which it wa3 created would be defeated.
 

 This question has been indirectly, before several of the courts of New York, and in all of them, so far as any opinion has been expressed, as I understand, it has been in favor of' the validity of these policies.
 

 ■ The practical construction of this act of 1849 by the public officers of the State, including the Attorney General, who were required to supervise the preliminary steps made necessary to the organization of the company, and to certify that it ha'd conformed to the provisions of the act, and the latter officers especially, that the charter was in accordance with it, is deserving of consideration.. Under the construction thus given, numerous companies have been organized with charters like the present, providing for cash premiums, or premium notes, at the election of the insured, and an extensive business of insurance carried on in New York and several of the sister States; and, although this practical construction caniiot be admitted as controlling, it is not' to be overlooked, and perhaps should be regarded as' decisive in a case of doubtj or where the error is not plain.
 

 The judgment of the court below is affirmed.
 

 Mr. Justice DANIEL dissents, on the ground of want of jurisdiction.