[No. 426.  Decided April 22, 1892.]

C. F. YEATON, *Respondent*, v. EAGLE OIL AND REFINING
COMPANY, *Appellant*.

CORPORATIONS—SALE OF STOCK—AGREEMENT TO REPURCHASE—PRE-
SUMPTIONS.

Where a party enters into contract with a corporation by which
he receives fifty shares of stock on payment of $5,000 to the corpo-
ration, and in consideration thereof he is appointed manager of a
branch house, under an agreement that in case of his discharge
from such position he should return such shares of stock and re-
ceive back his $5,000, such transaction renders him a stockholder of
such corporation, and does not establish merely the relation of
debtor and creditor between them.

In the absence of proof as to the powers of a foreign corpora-
tion in regard to the sale and repurchase of its own stock, it will
be presumed, for the purpose of upholding a contract, that the cor-
poration possesses such authority.

*Appeal from Superior Court, King County.*

The facts are stated in the opinion.

*Hill, Gilliam & Benson*, for appellant.

*Thompson, Edsen & Humphries*, for respondent.

The opinion of the court was delivered by

Hoyt, J.—The appellant, a corporation organized under
the laws of California, had a branch house for the sale of
oils at Seattle.   In the spring of 1890 the vice president
and manager of such corporation, in behalf of the com-
pany, entered into a contract with respondent to the effect
that the respondent should pay to such corporation the sum
of $5,000, and should receive therefor fifty shares of stock
of the par value of $100 each, and that in consideration of
so doing he should be appointed manager of the branch
house in Seattle.   It was further agreed, as part of the
same transaction, that if at any time the respondent should

be discharged by the corporation from his position as such manager, he should return such shares of stock to the corporation and receive back from or through it said sum of $5,000.

It is contended by respondent that such transaction between the parties established the relation of debtor and creditor between them.     That in contemplation of law the $5,000 so advanced by respondent was a loan to the company secured by the certificates of stock and payable upon the discharge of respondent from the managership of said Seattle branch.     On the other hand it is contended by appellant that by such transaction the respondent became a stockholder of such corporation with all the rights and duties attaching to such relation.     We think the contention of the appellant is correct, and that the rights of the parties must be investigated as being that of a stockholder on the one hand, and the corporation from which the stock was issued on the other.

Some question is made in the briefs as to the authority of the vice president and manager to enter into the contract, but we think that enough appears in the case to show a ratification on the part of the corporation of the acts of such vice president and manager, if the transaction was of such a nature that ratification thereof was possible.     The controlling question is as to the nature of the contract. Briefly stated, it was a sale of stock on the part of the corporation with an agreement that in a certain contingency it would buy it back at its par value.     There is nothing in the record, as seems to be claimed by the respondent, to show what was the nature of this issue of stock.     It nowhere appears that it was or was not the original issue thereof.     In relation to this subscription appellant contends that the condition attached thereto for the re-purchase of the stock was absolutely illegal and void.     That such would be the fact if such sale constituted an original issue of

such stock, as a part of the organization of the corporation, is practically conceded by the respondent, and seems to be established by the authorities. Appellant contends that it matters not whether it is an original subscription of stock, or a re-sale thereof; that in either case a contract of this nature would be a fraud upon the other stockholders of the corporation and void as against public policy. It is claimed, in that behalf, that a corporation has no authority to deal in its own stock. Upon this question there is much diversity of opinion as shown by the authorities; the weight of authority, however, seems to be that a corporation can deal in its own stock if specially authorized so to do by its charter, and that, whether so authorized or not, it may lawfully receive shares of its stock in payment of a claim against an insolvent debtor. And from such authorities we feel bound to hold that the charter of a corporation might be such as to authorize it to buy and sell its own stock as any other article of merchandise. This, of course, relates only to its stock after it has been once issued and fully paid for. There is nothing in the record to show what were the powers of the corporation appellant. For aught that appears in this case its powers and privileges, under its charter in regard to dealing with its own stock, were the most comprehensive known to the law. There is no proof whatever as to the California statute in regard to the organization of corporations in general, nor as to the particular provisions of the charter of this corporation. Appellant, in this regard, claims that in the absence of proof to the contrary it is the duty of the courts of this state to presume that the laws of California, in regard to the organization of corporations, are the same as our own, and that, as under our statutes, a corporation of such powers could not be organized, it follows that it could not be done in California. We are unable to agree with this contention of appellant. What the laws of a foreign state

are is a question of fact at issue in every case where the state of such law becomes material. Such fact can only be made to appear in the case by some presumption of the court in regard thereto, or by proof as in other cases. That the courts of one state will presume that the common law of a sister state is the same as its own is unquestioned, but we think that is the extent to which such presumption can extend, and that as to purely statutory regulations unknown to the common law no such presumption can arise. It will not be presumed that the statute law of another state, purely as such, is the same as our own. It follows that for the purposes of this case we are entirely uninformed as to the law of California in relation to the formation of corporations. And as we have seen that the law of such state might be such that a corporation organized thereunder could deal with its stock as other merchandise, it follows that the contract for the re-purchase of the stock of the respondent might have been warranted, unless this court will presume that it was an original issue of the stock as a part of the act of incorporation. The contract in question then is legal or illegal according to the presumption in relation thereto which this court must indulge as to this law of California, and as to the fact of whether or not the issue to respondent was an original issue. It is a rule of construction, too well settled for further questioning, that it is the duty of a court to sustain the contracts of parties rather than to overturn them. Courts will presume that contracts entered into between parties are legal and binding until the contrary appears. Apply this rule to the case at bar and it will be seen that it is the duty of the court to presume such a state of facts to exist in California as will support this contract, if such a presumption is possible. And from what we have said above it will be seen that this issue may have been a re-sale

of stock lawfully in the hands of the corporation for such purpose. It follows that the contract must be sustained.

Some other questions were raised, but they were practically waived upon the argument, and we think, in view of the record and the *status* of the contract as above stated, they are entirely untenable.

The judgment of the court below must be affirmed.

STILES, SCOTT and DUNBAR, JJ., concur.

ANDERS, C. J., not sitting.

### ON PETITION FOR REHEARING.

HOYT, J.—In this case a petition for rehearing was filed, and, upon consideration by the court, it was ordered that the appellant answer that portion of said petition which argued what the rule of presumption should be as to the statute law of a sister state in the courts of this state. Before such answer had been filed and the matter further considered by this court, the parties to the action settled the same out of court. It therefore becomes unnecessary and perhaps improper that this court should pass upon that question in the petition for re-hearing, to which an answer was required as above stated, and in view of the fact that an answer had been required, and that the court expected to further consider the point raised with the view of a possible revision of so much of the opinion in the case as related to said question of presumption, the court now directs that the question of whether or not the statute law of a sister state will be presumed to be the same as the statute law of this state in the courts thereof will not be considered as settled by the decision heretofore rendered in this action, but the same will be considered as an open question, and when again raised in this court will be passed upon as such.

SCOTT, DUNBAR and STILES, JJ., concur.

ANDERS, C. J., not sitting.