8693

## WETMORE, RECEIVER, v. McELROY.

1. MUTUAL INSURANCE COS.—THE CAROLINA MUTUAL INSURANCE CO., under the statute and its constitution, may accept a cash premium from a member and guarantee him against assessment for one year. *Corey* v. *Sherman,* 32 L. R. A. 490, *distinguished from this case.*

2. IBID.—ESTOPPEL.—Where an agent of such company makes such a contract with a member, the company is estopped from asserting it has no power to make such contract, although the acts of the agent were without his authority.

Before FRANK B. GARY, J., Spartanburg, December, 1912. Affirmed.

Action by S. M. Wetmore, receiver, against J. D. McElroy. Both parties appeal.

*Mr. J. W. Nash,* for plaintiff, cites: May on Ins., sec. 548; 32 L. R. A. 511; 52 S. C. 119; 80 S. C. 407; 22 Cyc. 1417, 1422.

*Messrs. Ben Hill Brown* and *T. F. Watkins,* for defendant, cite: 22 Cyc. 1416, 1417; 24 L. R. A. 252; May on Ins., sec. 548; 21 How. 35; 22 Cyc. 1422.

December 5, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This appeal involves the construction of certain provisions, in the constitution and by-laws adopted by the Carolina Mutual Fire Insurance Company, and in the policy issued by it, to the defendant.

The statute under which the said association was organized, contained the provision, that those associating themselves together, in the manner therein prescribed, might make, assess, and collect from each other, from time to time, as might be necessary to pay losses, occasioned by fire, etc.,

to any member of such association; and that the assessment and collection of such sums, should be regulated by the constitution and by-laws of the association (section 1912, Code of Laws, 1902).

The association adopted a constitution which contained the following provision:

"No member shall be liable for more than his *pro rata* assessment of losses incurred, and all policies issued by the company shall so provide. Inasmuch as the successful operation of this company is based upon the calculation that the average cost of insurance for the year will not exceed seventy-five per cent. of the old line rates, any member already a member of the company, or hereafter becoming such, shall have the right to pay in advance, such three-fourths of the old line rate and receive receipts therefor, which will protect such member from assessments during the succeeding twelve months; and the company hereby ratifies and confirms all contracts heretofore made to that effect with any member of the company."

It also passed a by-law providing that "each member shall pay an initial premium or dues, which shall be a sum equal to one-fourth of the Southeastern Tariff Association rates, upon the policy held by the member, and he shall pay, annually, such assessments as long as his policy remains of force." The policy issued to the defendant contained these stipulations:

"The insured has the privilege of paying assessments for losses in advance, each year, by paying an additional sum equal to twice the first payment, and thereby be exempt from assessments, and at the end of each year the insured will be credited with the difference, if any, between such payment and assessments, to which the policy would have been liable.

"This policy is made and accepted subject to the foregoing stipulations, conditions, and constitution and by-laws

of the company, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no agent or other representative of this company shall have power to waive any provisions or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to them, no agent or representative shall have such power, unless such waiver shall be written upon or attached hereto. This policy is not valid until signed by the president and the secretary."

The statute under which the Carolina Mutual Fire Insurance Company was organized did not prohibit the association from adopting a constitution and by-laws embodying the provisions hereinbefore set out, but, on the contrary, conferred upon it, full power to adopt such regulations as might seem advisable, provided, of course, they pertained to the objects of the association, and were not against public policy. Similar provisions were construed in the case of *Union Ins. Co.* v. *Hoge,* 21 How. 35, 16; L. Edition 61, in which the rule was thus correctly stated by the Court:

"It is argued, however, that the company in question is a mutual insurance company, as declared by the act; that, according to this system, the insured must be a member of it, and that a person insured upon a cash premium, without any further liability, cannot be a member. This argument is not well founded, either upon principle or authority. Admitting that the insured must be a member of the company, he is made so by the payment of a cash premium. The theory of a mutual insurance company is. that the premiums paid by each member for the insurance of his property constitute a common fund, devoted to the payment of any losses that may occur. Now, the cash premium may as well represent the insured in the common fund, as the premium note; and this class of companies has been so long

engaged in the business of insurance it may well be that they can determine, with sufficient certainty for all practical purposes, the just difference in the rates of premium between cash and notes. These mutual companies, possessing the authority contained in the 8th section of this charter, namely: to take cash premiums or premium notes, are, at the present day, in operation in several of the States, and it has never been supposed that the mutual principle has been thereby abrogated."

In 1910 the legislature passed an act containing this provision: "No officer of a mutual protective association shall give, either officially or privately, a guarantee or estimate, to a policyholder, against an assessment to which he may be liable." No doubt this statute was enacted to change the effect of the foregoing provisions. We desire to call special attention to the provision in the policy that "at the end of each year the insured will be credited with the difference, if any, between such payment and the assessment, to which this policy *would have been liable.*" (Italics added.) This was not the appropriate language, if the insured was to be held liable for any losses that might occur during the year in which he made the additional payments, but, on the contrary, shows that he was not liable at the end of the year for further assessments exceeding the cash payments.

Furthermore, it will be observed, that while the insured is to be credited with the difference between the additional payments and the assessments, no mention is made of assessments that *exceeded* the cash payments, for the obvious reason that he was exempt from further liability during the year in which the cash payments were made.

"In the absence of statutory prohibition a mutual insurance company may issue policies for cash premiums, which, under its by-laws, form a part of its general fund, from which all losses are to be paid." 22 Cyc. 1417.

It is true, the author says immediately thereafter: "But the company cannot provide, that on the payment of such cash premium, the policyholders shall be exempt from assessments to pay any losses occurring during the period for which it was paid." The only cases, however, cited to sustain the last proposition are *State* v. *Manufacturers Mut. Fire Asso.,* 50 Ohio St. 145, 24 L. R. A. 232, and *State* v. *Monitor Fire Asso.,* 42 Ohio State 555. Those cases were decided under a statute expressly prohibiting the association from limiting the amount of the annual liability, either to the amount of the cash premium when the policy is issued, or to the amount of additional cash premiums.

They, therefore, do not sustain the principle announced in the quotation from 22 Cyc. 1417.

The appellant's attorney relies upon the case of *Corey* v. *Sherman* (Iowa), 32 L. R. A. 490, in which the facts were quite different from those in the present case, as will appear from the following language of the Court:

"First. That the articles of incorporation provide that the losses and expenses are to be paid exclusively from assessments made upon the mutual pledges of the members. The company had no authority, by the terms of its charter, to apply the cash premiums in payment of losses. And, second, those who paid these premiums did not become members of the company and did not pay these premiums as assessments. They paid these premiums for insurance, for the full term of the policy, and the only rights they had thereafter to them, or any part thereof, was an unlawful agreement to pay dividends from the profits of the business." That case, however, shows that it may be regarded as a common practice for mutual insurance companies to adopt such regulations as those hereinbefore mentioned, and that they are valid, in the absence of a statute prohibiting them. The Court says: "We are aware that there are a great number of authorities holding that a mutual insur-

ance company may receive all cash premiums in lieu of assessments and still be considered a mutual company, but none of these cases were decided under a statute like ours, and in most of them the insured became members of the company, just as those who paid on the assessment plan, the only difference being that they paid their assessments in advance. We base our decision upon the terms of our statute."

There is another reason why the defendant was exempt from further assessments for losses sustained during the year in which the additional payments were made.

In the agreed statement of facts the following appears: "The plaintiff admits that a soliciting agent of the company, named W. Daniel, represented to the defendant that if he would pay three times the regular premium of $27.00 that he would be guaranteed against assessments for one year, and that the defendant did pay $82.50 on the policy for $2,900.00, and took the said agent's receipt for same, and that the said company became insolvent and went into the hands of a receiver on the 9th day of June, 1908."

The agent, while acting within the apparent scope of his employment, construed the policy, and offered to guarantee exemption from further assessments for losses occurring one year after its issuance, for the purpose, no doubt, of inducing the defendant to become a member of the association, which he did. The company was thereby estopped even though the acts of the agent were without authority. *Williamson* v. *Asso.,* 54 S. C. 582, 32 S. E. 765; *Eastern B. & L. Asso.* v. *Williamson,* 23 Sup. Ct. Rep. 527; *Drewery* v. *Amusement Co.,* 87 S. C. 445, 69 S. E. 879; *Kammer* v. *Knights of Pythias,* 91 S. C. 572, 75 S. E. 177; *Holliday* v. *Pegram,* 89 S. C. 73, 71 S. E. 367; *Plunkett* v. *Insurance Co.,* 80 S. C. 407, 61 S. E.; *McCarty* v. *Insur-*

*ance Co.,* 81 S. C. 152, 62 S. E. 1; *Williams* v. *Tolbert,*
76 S. C. 211, 56 S. E. 908.

Judgment affirmed.

Mr. Justice Watts *concurs.*

Mr. Justice Hydrick, *dissenting.* This action was
brought by the plaintiff, as receiver of the Carolina Mutual
Fire Insurance Company, to foreclose a lien upon certain
property of the defendant for the payment of an assessment
which was levied on October 3, 1908, by order of the
Court, to pay the expenses of the receivership and the losses
which occurred prior to June 9, 1908, the date of the
appointment of the receiver.

The company was a corporation which was organized
under sections 1912 *et seq.* of the Civil Code of 1902, which
provide for the organization of "Mutual Protection Asso-
ciations." The pertinent provisions of the statute are:

Section 1912. "Any members or persons of lawful age,
residents of this State, not less than ten in number, may
associate themselves together for the purpose of insuring
each other against loss by fire and lightning, cyclones, tor-
nadoes or windstorms; and may, after organization, asso-
ciate with themselves such other adult residents of this
State as members of said association as they may deem
proper; and may make, assess and collect upon and from
each other such sums of money, from time to time, as may
be necessary to pay losses which occur by fire and lightning,
cyclones, tornadoes or windstorms to any member of
such association, and the assessment and collection of such
sums shall be regulated by the constitution and by-laws of
the association."

Section 1913. "Of such persons, not less than ten thereof
shall make and subscribe a certificate, setting forth therein:
First. The name by which the said association shall be

known. Second. The place which shall be known and regarded as its principal place of business and head office. Third. The object of the association, which shall only be to enable its members and all who may thereafter become members of said association to insure each other against loss by fire and lightning, cyclones, tornadoes or windstorms, and to enforce any contract which may be by them entered into by which those entering therein shall agree to be assessed specifically for incidental purposes and for the payment of losses which occur to its members."

Section 1915 provides for organization of the corporation by the election of directors, officers, etc., and concludes, "but in no instance shall the power to insure against losses by fire or tornadoes be exercised to others than members of the association."

Section 1916. "All buildings insured by any mutual company shall be pledged to such company, together with the right and title of the assured in the lands upon which they are situate, to the amount of the premium note or contingent liability, and the company shall have a lien thereon to the amount of such note or liability. * * *"

The following are the applicable provisions of the constitution and by-laws of the company:

### CONSTITUTION.

1. "This company is organized under the provisions of article III, chapter 48, of the Code of Laws of South Carolina, adopted 1902."

6. "No member shall be liable for more than his *pro rata* assessment of losses incurred, and all policies issued by the company shall so provide. Inasmuch as the successful operation of this company is based upon the calculation that the average cost of insurance for the year will not exceed seventy-five per cent. of the old line rates. any member already a member of the company, or hereafter becoming such, shall have the right to pay in advance such three-

fourths of the old line rate and receive receipts therefor, which will protect such member from assessments for the succeeding twelve months; and the company hereby ratifies and confirms all contracts heretofore made to that effect with any member of the company."

## BY-LAWS.

1. "Membership in the company is acquired by the issuance by the company of a policy of insurance which has been applied for by or in behalf of the member; which application shall constitute a part of the contract of insurance.

2. "Each member shall pay an initial premium or dues which shall be a sum equal to one-fourth of the Southeastern Tariff Association rates, upon the policy held by the member, and he shall pay annually such assessments as may be levied by the board of directors, so long as his policy remains of force.

6. "The form of policy hereto attached constitutes the authorized policy of the company, and its provisions are part of these by-laws."

On October 5, 1907, defendant applied for and obtained a policy, the provisions of which, so far as pertinent to the issues involved, read as follows:

"In consideration of the stipulations herein contained and of the membership of the insured in said company by virtue of the insured's application and acceptance (the company), does insure J. D. McElroy against all direct and immediate loss or damage by fire or lightning, to the amount of not exceeding twenty-nine hundred dollars, the following property while located and contained as described herein.

"The insured has the privilege of paying assessments for losses in advance each year by paying an additional sum equal to twice the first payment, and thereby to exempt himself from assessments, and at the end of each year the insured will be credited with the difference, if any, between

such payment and the assessments to which the policy would have been liable.

"And the insurer hereby covenants and agrees to pay said insured, or legal representative, the amount of such loss or damage occurring after noon of this date, upon the notice and proof thereof, by *pro rata* assessments on liable policies; such payment to be made in accordance with the terms of this policy."

"Payment of any loss or damage shall be made by assessment next levied after receipt of proof of loss or damage.

"The only liability of the insured, or of any other member, or any officer of the company, is their *pro rata* assessments.

"This policy is made and accepted subject to the foregoing stipulations, conditions, and constitution and by-laws of the company, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto; and no agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to them, no agent or representative shall have such power, unless such waiver shall be written upon or attached hereto."

The defendant paid in advance a premium of $82.50, which was three-fourths of the old line rate on the risk, and he denies that he is liable for this assessment, because it was levied to pay expenses and losses which occurred before the expiration of the twelve months succeeding the date of his policy, his contention being that, under the provisions of section 6 of the constitution of the company and the second paragraph of his policy, above quoted, he was exempt from any further assessment for expenses or losses, except for such as occurred after the lapse of the twelve months succeeding the date of his policy.

He also relies upon the fact that the soliciting agent of the company represented to him that if he would pay the amount which he did he would be guaranteed against assessments for one year. We may dispose of this feature of the case, in passing, by saying that the policy did contain the provision which the agent told him it would contain. There was, therefore, no misrepresentation.

The Circuit Court held that, as there was no positive prohibition in the statutes against issuing such a policy as defendant's, it was within the power of the company to issue it, and that, as it was not *ultra vires* of the corporation, the defendant had the right to stand on its terms. But the Court held, further, that, being a member of the company, it would be against public policy to permit him to contract not only against losses other than those for which he paid in advance, but also against all other liability, and, therefore, that he was liable only for his *pro rata* of the expenses. Both sides appealed.

It is not contended by the defendant that he was not a member of the company. The Circuit Judge concluded that he was a member, and that his property was insured. and there is no exception to that ruling. Indeed, by the terms of the statute and the constitution and by-laws of the company, only members of the company could obtain insurance. *Jacobs* v. *Ins. Co.,* 52 S. C. 119, 29 S. E. 533. We must, therefore, proceed upon the assumption that defendant was a member of the company, and that his property was insured.

Elementary principles require that every provision of the statute, the constitution and by-laws of the company, and the policy must be given full force and effect, if that can be done by any reasonable method of construction, for they are all parts of the contract; also, that of two possible constructions, that must be adopted which would harmonize the various provisions rather than that which would make

them conflict.   And it requires neither argument nor cita-
tion of authority to show that if a conflict between the
statute and the constitution or by-laws of the company, or
the policy issued thereunder is unavoidable, the statute
must, of course, be given effect, and the provision of either
of the other instruments which conflicts with it must yield.

A careful consideration of the provisions of the statute
shows the intention that insurance in the "Mutual Protec-
tion Associations" therein authorized should be mutual, in
other words, that the members of the association should
insure "each other," and pledge the property insured for
the payment of losses by *pro rata* assessments.   The only
asset of the company contemplated by the statute is the
mutual liability of its members.   This being so, if the
defendant's contention should be sustained, the plan of
insurance would be wholly subverted, because mutuality—
the principle upon which it is based—would be destroyed.
To illustrate: Suppose every member, except one, should
take a "prepaid" policy, such as defendant's, and that one
(who alone has a regular *pro rata* assessment policy)
should sustain a loss within the year for which the others
had paid their premiums in advance, but after the fund
for payment of losses has been exhausted not one of them
would be liable to him.   And, if none of the others would
be liable to him, he would not be liable to any of them;
nor would they be liable to each other for losses occuring
within the year.   Therefore, if one of them should sus-
tain a loss within the year, not one of the company would
be liable to him.   The result would be a mutual insurance
company in which not a single member would have any
insurance—a legal impossibility.

Careful analysis of sections 1912 and 1913, *supra*, dis-
closes the intention that the members of the company shall
insure "each other" by assessing and collecting "upon and
from each other such sums of money as may be necessary

13—96

to pay losses," and that the object of the association "shall *only* be to enable its members * * * to insure each other." Therefore, to preserve that intention and object, the mutual liability must be maintained; and this cannot be done if those who took "prepaid" policies are not liable to assessment for losses which occurred within the twelve months after the date of their policies. Such a policy would violate the statute. This does not mean that the giving of premium notes or the paying of premiums in advance necessarily violates the law or destroys the plan of insurance.

The privilege provided for in section 6 of the constitution of the company, and the corresponding provision of the policy, is not necessarily in conflict with the statute. It can be given force and effect without conflicting with or destroying the liability of the "prepaid" and other policyholders to each other, by construing the language there used to mean only that "prepaid" policyholders were not to be required to pay assessments during the year, even if the amount paid by them in advance should fall short of the sum total of their *pro rata* assessments during the year, but that they were to be ultimately liable for the deficiency, the time of payment alone being postponed. Otherwise stated, it was merely the privilege of paying in advance a sum which was estimated to be sufficient to meet all current assessments during the year, with the agreement, in consideration of such payment, that, if the amount should prove to be insufficient for that purpose, the insured would not be called upon to pay any more until after the end of the year, and if it proved to be too much he would be credited with the difference. That construction of the privilege makes it harmonize with the statute and all other provisions of the constitution, by-laws and the policy, which provides throughout for *pro rata* assessments, and it preserves the principle of mutuality, while the other brings it into conflict with the statute. "In the absence of statutory prohibi-

tion, a mutual insurance company may issue policies for cash premiums, which, under its by-laws, form a part of its general fund from which all losses are to be paid. But the company cannot provide that, on payment of such cash premiums, the policyholders shall be exempt from assessment to pay losses occurring during the period for which it was paid." 22 Cyc. 1417. The plan of "prepaid" assessments was adopted, no doubt, for the mutual accommodation and convenience of the company in getting the use of the money and in simplifying its bookkeeping, as well as the policyholder, who was thereby saved the annoyance of having to pay numerous small assessments during the year.

As defendant's position was that he was not liable at all, no point was made that the assessment was levied within the year, contrary to the exemption as herein construed. But that objection could only have postponed the collection of the assessment until the end of the year; and it could not have availed the defendant, because it was due when this action was commenced.

We think, therefore, that defendant was liable for the assessment levied for losses as well as for expenses, and that the judgment below should be modified accordingly.

MR. JUSTICE FRASER *concurs.*