[No. 21934. Department One. August 26, 1929.]

T. M. FLEMING, *as Receiver, Respondent*, v. ROBERT B. REINHARDT *et al., Appellants.*[1]

[1] Reported in 280 Pac. 9.

*Hugo F. Luhman* and *D. V. Morthland,* for appellants.

*Grady & Velikanje,* for respondent and cross-appellant.

Holcomb, J.—About 1912, a number of non-residents of Washington purchased farm lands in Yakima county, within what is known as the Tieton reclamation project of the United States reclamation service. Because the government would not accept applications for a water right from a nonresident of this state, domestic corporations were organized for the purpose of taking title to such lands and applying for the water rights which would be granted therefor by the reclamation service. Among others, James L. Parson, a resident of New York, owned a forty-acre tract of land which came under the Tieton project. Accordingly, he and other nonresident owners living in New York and New Jersey organized the Sage Brush Inn Orchard Company under the laws of Washington. Its articles of incorporation provided that its principal object was to acquire by purchase, or otherwise, lands within the

northeast quarter of Section 33, Township 13 North, Range 17 E. W. M., situate in Yakima county, Washington; to secure water rights therefor and to develop and farm the same. A large part of the above described quarter section of land was afterwards conveyed to the corporation by various owners, and such owners received, in exchange for such conveyances, one share of the capital stock of the corporation for each acre so conveyed.

Parson conveyed to the corporation forty acres of land in the above quarter section described in his deed as the north half of the north half of the northeast quarter of Section 33, Township 13, North, Range 17 E. W. M., situate in Yakima county, Washington.

Each certificate received by the stockholders in the corporation so organized recited on its face that the same represented a specified fractional part of the right, title and interest in and to a certain tract of land conveyed to the corporation by a certain deed, giving its record, page and number as recorded in the office of the county auditor of Yakima county, Washington. The by-laws of the corporation contained the following provisions:

"ARTICLE IX

"(1) Each and every share of stock in this corporation represents one (1) acre of land in the Northeast Quarter (NE¼) of Section Thirty-three (33) Township Thirteen (13) North of Range Seventeen (17) East of the Willamette Meridian, situate in Yakima county, Washington. The capital stock in this corporation shall be paid for in full by each subscriber conveying to the corporation as many acres of the above described land as he holds shares of stock in the company, such conveyance, however, to be subject to reservations and contracts now in force and affecting said land, including payments of all water charges and assessments. When the capital stock has been paid for in full, in accordance with the above terms, cer-

tificates of stock fully paid shall be issued, of the par value of Two Hundred Fifty (250) dollars, each share.

"(2) Whenever any stockholder in this corporation shall desire to surrender his stock to the corporation and to receive therefor title in fee simple to the tract of land originally deeded to the corporation, he may do so and the land shall be sold to him by the corporation at a price not to exceed Two Hundred Fifty (250) Dollars, an acre, payable in stock of the corporation at its par value; it being understood, however, that the stock so to be received, in payment for the said land must be fully paid and the stockholder so delivering his stock shall first be clear on the books of the corporation, and the land shall be conveyed to him by the corporation, subject to all reservations and contracts then in force and affecting said land, including all water charges, assessments, etc.

"(4) Transfer of the capital stock shall be made either in person or by attorney only on the books of the company, on a transfer book kept for that purpose and upon surrender of the old certificate.

"ARTICLE X.

"These By-Laws, excepting sections one (1) and two (2) of Article IX, may be altered by amendment or by repeal at any stockholders' meeting, either special or regular, by a three-quarters' vote of the entire capital stock of the corporation, upon notice given as elsewhere herein provided."

The corporation made the applications for water rights for the lands in the quarter section acquired by it to the reclamation service, and collected from each stockholder the necessary moneys to be paid to the United States for water service and other assessments and for taxes. The corporation did not, in any other respect, exercise any dominion over the lands acquired by it. The lands were planted to orchards and farmed and developed under separate contracts by the individual stockholders as to the respective tracts each such stockholder had originally conveyed to the cor-

poration. The treasurer of the corporation merely collected the necessary funds and disbursed the same, but each stockholder paid only the expenses connected with his separate tract of land. Having complied with all the objects of its incorporation, all of the lands so transferred to the corporation were reconveyed by it to the various stockholders between the years 1917 and 1920.

When the corporation was organized, one share of stock, which really belonged to Parson, was issued to A. J. Balliet, a resident of this state, so that he could act as an incorporator and trustee. Balliet assigned this certificate to Parson. The other thirty-nine shares were issued to Parson, apparently in two certificates, one for nine shares and the other for thirty shares. The nine-shares certificate and the one-share certificate that had originally been issued to Balliet, were assigned by Parson to Hubert F. John as collateral security for a loan made by him to Parson. Parson also made a deal with a friend of his, defendant Reinhardt, also of New York, whereby Parson purported to sell to Reinhardt ten acres of the land he had deeded to the corporation.

The evidence in the record is uncontradicted that ten shares of stock were transferred from Parson to Reinhardt. They were never transferred on the corporate books, and never surrendered to the company. On May 12, 1920, the corporation, acting by James L. Parson, as president, and Robert B. Reinhardt, as secretary, executed a deed to ten acres of land, which had been conveyed by Parson to the corporation, to Reinhardt. The balance of the forty-acre tract which had been conveyed by Parson was reconveyed to Parson by a deed likewise executed in behalf of the corporation by himself, as its president, and Reinhardt, as its secretary.

After the reconveyance of the thirty-acre tract to

Parson, he and his wife executed a mortgage thereon in favor of one Fanny E. Lane, securing promissory notes in the sum of $5,000, which mortgage has never been paid and which is now held by appellant Barbara Johnson, and upon which there remains due and unpaid the sum of $5,000 and interest at eight per cent from October 20, 1925. Later, Parson died, and his estate being probated in Yakima county, Washington, the thirty-acre tract of land was sold on administrator's sale to Fechter and Mead, subject to the Johnson mortgage.

The corporation passed into the hands of the respondent as receiver, who brought this action on behalf of the stockholders, to set aside the transfers to Parson and Reinhardt on the ground that they were fraudulent, without consideration and were executed invalidly by the grantees thereof in behalf of the corporation, as its officers, to themselves.

It developed that Parson had been indebted to Hubert F. John upon a promissory note and, in order to secure it, had pledged to John the certificate representing ten shares of the capital stock. These certificates were never transferred on the books of the corporation, were held in their original form, indorsed in blank, and no claim for the indebtedness was ever filed by John in the probate proceedings conducted in this state and regularly closed after the administrator's sale. One of the certificates so pledged to John as collateral security was for nine shares and 9/40ths of the right, title and interest in the land conveyed by Parson and the other was for one share and for 1/40th of the right, title and interest in the same forty-acre tract conveyed to the corporation. On the back of these certificates, appears the following notation: "Transferable only on the books of the company and subject to the provisions of the by-laws."

Defendant Reinhardt did not appear in this case, an order of default was entered against him and the ten-acre tract, which had been conveyed to him by Parson, was thereby recovered in this proceeding.

As to the remaining thirty acres, the trial court held that the deed to Parson was presumptively fraudulent, and therefore voidable, and set aside the deed and mortgage as to an undivided one-fourth interest therein, and decreed that the receiver was entitled to such undivided one-fourth interest to be disposed of by him in the receivership proceedings, thereby giving the receiver title to the Reinhardt ten acres and the equivalent of seven and one-half acres of appellant's lands.

From the above decree, both sides have appealed.

The articles of incorporation, by-laws, and all the evidence produced in this case disclose that the corporation organized was not the ordinary financial, trading, mercantile or business corporation. Neither was it organized for the purpose of operating the ordinary business of orcharding. It was organized simply to take title to the lands specified in the articles of incorporation, make applications for Federal water rights, pay the water right duties and other assessments relating thereto and keep the lands free from taxes and assessments. That was all it undertook to do.

It is manifest that this corporation differs from the ordinary corporation which does some general business financially or industrially or by selling or trading goods and other property.

The trial judge said that the burden of proof rested upon appellants and had not been met by them as to the deeds made to Parson by the corporation, executed by himself as president and Reinhardt as secretary, to both Parson and Reinhardt as grantees, to prove that there was authorization of the execution; that the

deeds were based upon sufficient consideration; and all other elements going to show good faith in the transactions, and validate the deeds.

Respondent contends that the trial judge should have stopped when he found that the deeds to Parson and Reinhardt were presumptively fraudulent and voidable, the deeds being either good *in toto* or bad *in toto*.

The corporate books of this corporation could not be found. Parson had been president of the corporation from the time it was organized until the date of his death. One Edwards had been secretary of the corporation for a number of years, but had disposed of his interest, delivered the books to Parson, and thereupon Reinhardt became secretary. Reinhardt testified that he never had the books, was never active as secretary, but always signed and did anything requested by Parson.

Where the thirty shares of stock, that had been received by Parson in addition to the ten shares pledged by him to John, are, is unknown.

It was a *sine qua non,* under the by-laws of the corporation, that,

"Whenever any stockholder in this corporation shall desire to surrender his stock to the corporation and to receive therefor title in fee simple to the tract of land originally deeded to the corporation, he may do so and the land shall be sold to him by the corporation at a price not to exceed Two Hundred Fifty (250) Dollars, an acre, payable in stock of the corporation at its par value; etc.

"Transfer of the capital stock shall be made either in person or by attorney only on the books of the company, on a transfer book kept for that purpose and upon surrender of the old certificate."

Our statute also provides that such stock shall be transferable in the manner provided by the by-laws of the company, but no transfer shall be valid except

between the parties thereto until the same shall have been entered upon the books of the company so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares and the date of the transfer. Rem. Comp. Stat., § 3819.

We can find no case like this in the books. We can grant the contention of appellants that, when the instrument was authenticated by the seal of the corporation, as the deeds in this case were, the law presumes that the conveyance was authorized and it was not necessary to produce further evidence to make a *prima facie* showing of authority. *Milton v. Crawford*, 65 Wash. 145, 118 Pac. 32; 4 Thompson on Real Property, § 3683.

We do not find it necessary to consider and review the texts and authorities cited by respondent to the effect that such an instrument as that before us is void or voidable and the burden is upon the grantee and his successors to show authority to execute the instrument, the adequacy of the consideration, that it was a proper instrument for the corporation to have executed, that its best interests were served thereby and generally the good faith of the transaction. The rule in this state is that it might be voidable, at most. *Westland v. Post Land Co.*, 115 Wash. 329, 197 Pac. 44.

Under the peculiar organization of this corporation, any stockholder who had conveyed land to it, and who held shares of stock representing the same, was entitled to a reconveyance of the land upon surrender of the corresponding shares of stock. No one could interdict any such transfer. No question of power, or of *uberrima fides,* could ever be raised. It is immaterial whether the stockholder entitled to such conveyance was one of the officers of the corporation or not. The authority was derived from the by-laws.

The corporation enacted its own laws, in its articles and by-laws, which were presumptively valid. All persons dealing with the corporation were bound to take notice of the articles of incorporation and the by-laws. So were such officers when reconveying the lands, to which they would otherwise be absolutely entitled, to themselves. It was a condition precedent to a valid conveyance, that each and every one of such stockholders surrender the stock held by them upon receiving deeds for the land. This was never done by Parson, and it cannot even be determined where the shares of stock, except the H. F. John ten shares, are. Apparently they are outstanding somewhere.

It is argued that placing the burden of proof on the shoulders of the appellants placed them in an impossible situation because of the loss of the records and files of the corporation and because of the death of Parson. But that was a burden assumed by Parson as an officer and stockholder of the corporation, and cannot be avoided. The consideration for the reconveyance was the surrender of the forty shares of stock, free from all land contract payments, water charges, assessments and taxes. Ten of those shares had been assigned and pledged to a creditor of Parson, the pledge to that creditor foreclosed and the stock sold at public auction in New York. In all, thirty shares are unaccounted for. Under the by-laws and our statute, those thirty shares are apparently still outstanding in the name of Parson or his estate, which alone would render the reconveyance by Parson to himself of the thirty acres of land voidable at the instance of any other creditor or stockholder. All subsequent transactions involving the land were had subject to those conditions and infirmities.

We are convinced that the holding of the court upon this branch of the case is correct.

■ On the cross-appeal of the receiver, we are satisfied, also, that, since the deed to Parson was voidable and should be set entirely aside, the legal and equitable effect which should result is that the entire thirty acres covered by the Parson deed to himself should be restored to the receivership estate and not divided between the parties as the trial court thought equitable. It would be inequitable for a division of the thirty acres to be made on the basis of one-fourth, since the one-fourth does not represent one-fourth of the capital stock representing the forty acres which Parson originally conveyed to the corporation and received forty shares of stock for, and which have not been accounted for, except as to the stock transferred by him to Reinhardt, which was never surrendered.

We conclude that that part of the decree distributing the property between the parties, granting to the receiver seven and one-half acres of the land instead of ten acres, should be reversed so that the receiver can administer upon the entire thirty acres of the parcel of land, other than that which Reinhardt received, and after satisfying any creditors who may have presented their claims and paying the expenses of the receivership, either distribute the land to stockholders who surrender their stock in accordance with the by-laws, or sell the land and distribute the proceeds in the same way.

It is therefore ordered that a decree be entered herein in accordance with this opinion, affirming the judgment on appeal by defendants, and reversing the decree on the appeal by the receiver.

■ Although the receiver, as appellant, has obtained a more favorable decree on appeal, this is an equitable action, in which the issues involved are new, very important and an appeal by defendants extremely justifiable.

In the exercise of our discretion, under Rem. Comp. Stat., § 1744, costs on appeal will not be taxed to either side.

TOLMAN, FULLERTON, and PARKER, JJ., concur.

BEALS, J. (concurring)—My understanding of the opinion of the majority in this case is that the same holds that the thirty acres of land (or the proceeds thereof) shall, in the future, be set over by the receiver, under order of the court, to any person (including appellants) who shall present the missing shares of stock, or who shall establish, in some appropriate manner, the loss or destruction of the certificate and his ownership thereof, and give such security as may be directed to protect the corporate estate from any claim on the part of any person subsequently presenting the certificate.

So understanding the opinion, I concur therein.