McMAHON, Appellant, *v.* COONEY, Governor, et al.,
Respondents.

(No. 7,164.)

(Submitted July 12, 1933. Decided July 25, 1933.)

[25 Pac. (2d) 131.]

Mr. R. F. Gaines and Mr. J. A. Poore, for Appellant, submitted a brief and argued the cause orally; Mr. A. J. Galen, of Counsel.

Mr. Raymond T. Nagle, Attorney General, Mr. C. F. Morris, Assistant Attorney General, Mr. H. L. Maury, Mr. A. G. Shone, Mr. C. F. Holt and Mr. S. C. Ford, for Respondents, submitted a brief; Mr. Maury and Mr. Ford argued the cause orally.

*Mr. Eugene Quay,* of the Bar of Chicago, Illinois, *Amicus Curiae,* submitted a brief.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This action was brought by plaintiff, a resident property taxpayer, against the Governor, the Secretary of State, and the Attorney General, as such, and as ex-officio members of the state board of examiners, the State Auditor and the State Treasurer. Plaintiff sought to enjoin the defendants from assuming, on behalf of the state, fire insurance policies on various buildings, the property of the state, and the issuance and delivery of warrants in payment of the premiums on these policies.

On the filing of the complaint, an order to show cause and a temporary restraining order were issued. Answer was filed by the defendants, and thereafter a hearing was had on the order to show cause. Subsequently the trial court ordered the dissolution of the temporary restraining order, from which the plaintiff has appealed.

On September 1, 1932, the state, through the state board of examiners, insured the state property for a term of three years against loss or destruction by fire on a valuation of $9,353,685, for premiums aggregating the sum of $74,445.32. Later suit was brought by the Miller Insurance Agency to avoid this insurance, which suit was decided adversely to the contentions of the agency. (*Miller Insurance Agency* v. *Porter,* 93 Mont. 567, 20 Pac. (2d) 643.) Following the decision in that case, the state board of examiners exercised its option to cancel the insurance then existing, but meanwhile it had caused advertisement for bids for new policies of insurance to be made. Plaintiff submitted a bid for $25,000 of insurance at the rate of .796 per hundred for a three-year term. The Miller Insurance Agency bid upon a valuation of $6,661,389 at the rate of .60 for three years. The bid of the Miller Insurance Agency was accepted. Further insurance was later awarded in the sum of $100,000 on the State Law Library to the same agency.

The insurance so awarded to the Miller Agency was distributed among certain mutual fire insurance companies, and two policies were in stock-plan companies. The policies of insurance were issued and delivered to the state under the award. These policies, the articles of incorporation of the mutual companies, and the by-laws of each of these companies were received in evidence on the trial of the cause.

No question is here raised as to the validity of the two policies written in the stock-plan companies. The plaintiff contends that for various reasons, which will hereafter be noted, the policies of insurance in the mutual companies are null and void. These policies in the mutual companies all provide for a definite amount of insurance in consideration of the payment of a definite and fixed cash premium. They contain no provision on their face whereby the state of Montana may incur any additional liability other than the stipulated cash premiums. The articles of incorporation, in some instances, and the by-laws of each of these companies specify that the company may issue cash premium policies. All the mutual insurance corporations are incorporated under the laws of some state, other than Montana, and all have complied with the statutes of the state of Montana necessary to their being authorized to transact business within the state, and have been authorized by the proper state authorities to engage in business within this state.

Plaintiff asserts that, by accepting these policies of insurance in mutual companies, the credit of the state is thereby loaned in violation of section 1 of Article XIII of our Constitution, which provides: "Neither the state, nor any county * * * shall ever give or loan its credit in aid of * * * any individual * * * or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation * * * of law."

Where, as here, the mutual insurance company has entered into a contract of insurance for a definite and certain premium,

no contingent or additional liability being created, the credit of the state is not thereby given or loaned to the mutual companies, and this constitutional provision is not violated. (5 McQuillin on Municipal Corporations, p. 559; *Johnson* v. *School District*, 128 Or. 9, 270 Pac. 764, 273 Pac. 386.)

Plaintiff argues that, under the state of the record here before us, these mutual fire insurance companies may not lawfully enter into contracts of insurance for a cash premium, and that therefore these policies are void. The foundation of this argument is found in the provisions of section 6158, Revised Codes of 1921, which provide as follows: "It is unlawful for any corporation organized upon the mutual plan to do business and take risks upon the stock plan, or for a corporation organized as a stock corporation to do business upon the plan of mutual insurance."

This section was first enacted as a part of the 1895 Codes. It now applies to domestic mutual fire insurance companies. In 1919 the legislature enacted in its final form what is now section 6150, Revised Codes of 1921, providing as follows: "Any corporation organized under the laws of any state, district, or territory of the United States other than the state of Montana, or under the laws of any foreign country, to transact the business of fire or casualty insurance on the mutual plan, in accordance with the law of the state or country of its organization, may be permitted to transact any business within the state of Montana which it is authorized to transact in the state or country where it is organized, upon complying with the laws of the state of Montana applicable to it; provided, that such company is possessed of a surplus of two hundred thousand dollars or more; provided, however, that nothing in this Act shall apply to companies now authorized to transact business in the state of Montana." This latter section relates to foreign mutual fire insurance companies. If foreign mutual insurance companies are authorized to write single premium policies under their charter and the laws of the state of their creation, and if we had no other

statutory or constitutional provision pertinent, unquestionably these contracts would be valid.

On the trial of this case, no effort was made to prove the laws of any or all of the states in which these various mutual companies were organized. Plaintiff argues that, by reason of the silence of the record as to the laws under which these companies were organized, the presumption is that the laws are the same as those of Montana, and, that a Montana mutual fire insurance company cannot write a single cash premium policy (sec. 6158), and that it is therefore presumed that the laws of these various states contain like provisions. Hence, he argues, these companies may not lawfully enter into these contracts of insurance.

This court has on numerous occasions held that, in the absence of pleading and proof to the contrary, it will be presumed that the statutes of a foreign state are the same as our own. (*In re Wray's Estate,* 93 Mont. 525, 19 Pac. (2d) 1051; *Springhorn* v. *Roberts,* 77 Mont. 395, 250 Pac. 1112; *State ex rel. Rankin* v. *American Bank & Trust Co.,* 76 Mont. 445, 247 Pac. 336.)

It is generally held that, in the event of express statutory authority, a mutual fire insurance company may write single cash premium policies. The majority rule is the same, in the absence of an express statutory prohibition. (*Union Ins. Co.* v. *Hoge,* 21 How. 35, 16 L. Ed. 61; *Mygatt* v. *New York Protection Ins. Co.,* 21 N. Y. 52; *Wetmore* v. *McElroy,* 96 S. C. 182, 80 S. E. 266, Ann. Cas. 1916B, 79, and note; 1 Couch on Insurance, sec. 251, p. 594.)

As previously noticed, the articles of incorporation, in some instances, and the by-laws of all these mutual insurance companies provide for the issuance of single cash premium policies. It is true that these corporations could not by mere by-law provision increase the authority vested in them contrary or in addition to the powers vested in them by their articles of incorporation and the statutory provisions of their respective states of origin. (6 Fletcher on Corporations, sec. 2494, p. 213.) Their by-laws must of necessity conform to the statutes

of their several states. Unless the statutes of their domicile prohibit the issuance of single cash premium policies, under their various articles of incorporation, the by-laws referred to would be a valid rule. If they adopted such a rule in the face of a statutory prohibition, it would be in disobedience of law.

It is presumed that the law has been obeyed. (Subd. 33, sec. 10606, Rev. Codes 1921.) If we indulge this presumption, then the by-law would be within the power of these corporations to adopt. If we indulge the presumption for which plaintiff contends, the by-law would be invalid. It is sometimes said that conflicting presumptions of law do not arise in the consideration of a cause; that they appear successively, and exist until overcome by another. But such a statement is a mere quibbling with terms, and it appears that this is a more effectual description of the situation existing than any suggested substitute. (1 Jones on Evidence, 2d ed., sec. 357, p. 610.) One presumption of greater dignity may overcome another of less. (*Burgess* v. *Lasby,* 91 Mont. 482, 9 Pac. (2d) 164.)

The presumption that the laws of a sister state are the same as those of the forum, in the absence of proof, is largely one of convenience to enable courts to supply a rule of decision upon the failure of one of the parties to furnish the proof he was in duty bound to produce. The presumption that the law has been obeyed is one founded upon human experience. The first presumption is the common-law presumption which this court has adopted. The latter presumption has been written into the statute law of this state. It is a creation of the statute. (4 Nichols on Applied Evidence, sec. 3341.) We find no mention of this presumption, at least in the statutory form, in the standard works on the subject of evidence.

A statutory disputable presumption is satisfactory if uncontradicted. (*Renland* v. *First Nat. Bank,* 90 Mont. 424, 4 Pac. (2d) 488.) The statute commands that it must be followed if uncontroverted. (Sec. 10604, Rev. Codes 1921.) Whether sworn testimony to the contrary is sufficient to rebut

such a statutory presumption is a question for the triers of fact to determine, except where the facts proved are overwhelmingly against the presumed facts and permit of but one rational and reasonable conclusion. (*Renland* v. *First Nat. Bank,* supra; subd. 2, sec. 10672, Id.)

Furthermore, there is an additional presumption recognized by the authorities, namely, that the acts of a corporation are not *ultra vires.* (1 Jones on Evidence, 2d ed., sec. 212, p. 357; *Denecke* v. *West,* 184 Iowa, 600, 169 N. W. 97; *Providence Engineering Corp.* v. *Downey Shipbuilding Corp.,* (C. C. A.) 294 Fed. 641; *Southern Express Co.* v. *Western North Carolina Ry. Co.,* 99 U. S. 191, 25 L. Ed. 319; *Ohio etc. Co.* v. *McCarthy,* 96 U. S. 258, 24 L. Ed. 693; *Jacobs* v. *Monaton Realty Corp.,* 212 N. Y. 48, 105 N. E. 968.) The presumption, in the absence of evidence to the contrary, is that a particular contract entered into by a foreign corporation, or an act done by it, was within the power conferred upon it by its charter and by the laws of the state by which it was created. (17 Fletcher on Corporations, sec. 8384, p. 158; *Boulware* v. *Davis,* 90 Ala. 207, 8 So. 84, 9 L. R. A. 601; *New England Mut. Life Ins. Co.* v. *Hasbrook's Admx.,* 32 Ind. 447; *McCluer* v. *Manchester & L. R. R.,* 13 Gray (Mass.), 124, 74 Am. Dec. 624; *Yeaton* v. *Eagle Oil & Ref. Co.,* 4 Wash. 183, 29 Pac. 1051.) In the last case cited it was held that the presumption of regularity was superior to the presumption that the laws of the sister state were the same as the statutes of the forum. (See, also, *Denecke* v. *West,* supra.) It has also been held that the by-laws of a corporation are presumptively valid. (*Fleming* v. *Reinhardt,* 153 Wash. 526, 280 Pac. 9.)

Since there are several presumptions in favor of the authority ▮ to issue these policies of insurance, one of which is a statutory presumption, which under the law and the decisions of this court may be evidence sufficient to support a judgment or finding as against sworn testimony, and opposed to these presumptions we have another presumption which has not been recognized by statute, we hold that the evidence in this regard preponderates in favor of the conclusion, impliedly

reached by the court, namely, that these mutual companies were authorized under the laws of their respective states of origin to execute these policies of insurance.

It is insisted by the plaintiff that, even though we reach the conclusion that the corporations were authorized under the laws of their several states to issue these policies, nevertheless section 6150 is invalid, being contrary to the provisions of section 11, Article XV, of our Constitution. It is there provided that "no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater right or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

The record does not disclose that there is a single domestic mutual fire insurance company in this state, and, unless there is such a company or companies, no discrimination would result. In any event, the rule is well settled in this state that where, as here, the claim is made that a statute is unconstitutional because it is discriminatory, only those who are discriminated against will be heard to raise the question. (*State ex rel. Intermountain Lloyds* v. *Porter,* 88 Mont. 347, 294 Pac. 363; *Spratt* v. *Helena Power Trans. Co.,* 37 Mont. 60, 94 Pac. 631; *Barth* v. *Pock,* 51 Mont. 418, 155 Pac. 282; *State ex rel. Lockwood* v. *Tyler,* 64 Mont. 124, 208 Pac. 1081; *Thomas* v. *City of Missoula,* 70 Mont. 478, 226 Pac. 213; *State* v. *Vettere,* 77 Mont. 66, 249 Pac. 666; *State ex rel. Powell* v. *State Bank of Moore,* 90 Mont. 539, 4 Pac. (2d) 717, 80 A. L. R. 1494.)

But it may be said that this action is brought by a taxpayer, and hence the foregoing rule is without application. Plaintiff's only interest is that, if a loss by fire is sustained by the state while these policies of insurance are in effect, may the insurance companies assert the invalidity of the policies by raising the question as to the constitutionality of section 6150? If they cannot thus assert the invalidity of these contracts, the question is of no further concern to the plaintiff, for

one who is neither injured nor whose interests are not jeopardized by the operation of a statute cannot challenge its constitutionality. (*State ex rel. City of Wolf Point* v. *McFarlan,* 78 Mont. 156, 252 Pac. 805; *State* v. *Vettere,* supra.)

These companies have entered into these contracts of insurance under the authority of section 6150. One who has acted under a statute or in pursuance of the authority conferred by it, or has claimed the benefit of the statute to the detriment of others, may not question its constitutionality. (12 C. J. 769; *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187.) The supreme court of the United States has said in the case of *Aetna Ins. Co.* v. *Hyde,* 275 U. S. 440, 48 Sup. Ct. 174, 176, 72 L. Ed. 357: "Companies whose constitutional rights are not infringed may not better their position by urging the cause of others." The insurance companies here involved, having accepted the benefits conferred by section 6150, will not be heard to assert that the section is invalid.

Plaintiff not being in the class entitled to urge this alleged discrimination, his contention in that regard must fail.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and STEWART concur.

MR. CHIEF JUSTICE CALLAWAY: I concur in the result, *dubitante.*

Rehearing denied September 30, 1933.