## UNITED STATES v. JAMIESON.

(Circuit Court, S. D. New York. February 3, 1911.)

1. ALIENS (§ 23*)—"CHINESE PERSON"—EXCLUSION—"LABORER."

A Chinese seaman, a member of the crew of a vessel calling temporarily at the port of New York, was not a "laborer" or a "Chinese person" within Chinese Exclusion Act Sept. 13, 1888, c. 1015, § 9. 25 Stat. 478 (U. S. Comp. St. 1901, p. 1316), providing that the master of any vessel who shall knowingly bring within the United States on such vessel and land or attempt to land, or permit to be landed, any Chinese laborer, or other Chinese person, in contravention of the act, shall be guilty of a misdemeanor and punished, etc.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 2, pp. 1141–1143; vol. 5, pp. 3952–3968; vol. 8, p. 7700.]

2. ALIENS (§ 24*)—CHINESE PERSONS—EXCLUSION ACT—CONSTRUCTION—"ABOUT TO COME TO THE UNITED STATES."

Chinese Exclusion Act May 6, 1882, c. 126, § 6, 22 Stat. 60 (U. S. Comp. St. 1901, p. 1307), providing for the exclusion of Chinese laborers "about to come to the United States," means to "come with the intention of remaining at least for some period of time," and therefore did not include a seaman landing at a port in the United States for temporary purposes while his vessel was in port.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 24.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ALIENS (§ '38*)—CHINESE EXCLUSION—OFFENSES—"BRINGING INTO UNITED STATES"—INDICTMENT—INTENT.

Chinese Exclusion Act Sept. 13, 1888, c. 1015, § 9, 25 Stat. 478 (U. S. Comp. St. 1901, p. 1316), provides that the master of any vessel who shall knowingly bring into the United States on such vessel and land, or permit to be landed, any Chinese laborer or Chinese person, in contravention of the act, shall be deemed guilty of a misdemeanor, etc. *Held*, that the words "bringing into the United States" mean "bringing with the intention to leave"; and hence an indictment charging the master of a vessel with bringing a Chinese laborer into the United States, failing to allege that his act was with the specific intent to leave such person in the United States contrary to law, was insufficient.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 1, pp. 876, 877.]

Robert Jamieson was indicted for knowingly landing a Chinese laborer in the United States, and demurred. Demurrer sustained, and indictment quashed.

This is a demurrer to an indictment under section 9 of the act of September 13, 1888, being chapter 1015 of the Acts of the First Session of the Fiftieth Congress (25 Stat. 478). The section is as follows: "Sec. 9. That the master of any vessel who shall knowingly bring within the United States on such vessel, and land, or attempt to land, or permit to be landed any Chinese laborer or other Chinese person, in contravention of the provisions of this act, shall be deemed guilty of a misdemeanor and, on conviction thereof, shall be punished with a fine of not less than five hundred dollars, nor more than one thousand dollars, in the discretion of the court, for every Chinese laborer or other Chinese person so brought and may also be imprisoned for a term of not less than one year, nor more than five years, in the discretion of the court." U. S. Comp. St. 1901, p. 1316. The indictment charges that the defendant was master of the steamship, and did knowingly bring to the port of New York a Chinaman, named Ah Far, a seaman and member of his crew, and did knowingly land the said seaman and permit him to be landed. The indictment then contains certain negative statements designed to exclude the case from various exceptions contained in the several statutes thought to be applicable. Nothing turns upon these.

Isaac H. Levy, for the United States.

George Whitefield Betts, Jr., for defendant.

HAND, District Judge (after stating the facts as above). Two questions are raised: First, whether a seaman or member of the crew of a vessel are within the section quoted; and, second, whether the indictment is adequate in its terms. It must be conceded in the first place that there is no statute absolutely excluding any Chinaman from the United States except a laborer. Act May 6, 1882, c. 126, 22 Stat. 58 (U. S. Comp. St. 1901, p. 1305), specifically refers to laborers only; and, though the act of September 13, 1888, was unquestionably broadly comprehensive of all Chinese persons, sections 1 and 15 admittedly never went into effect, and it is very doubtful whether sections 2, 3, and 4 ever did either. Sections 5 to 14, inclusive, all of which have been from time to time re-enacted, are administrative sections, and do not exclude any new classes. On the other hand, under section 6 of the act of 1882, originally as well as when amended by Act July 5, 1884, c. 220, 23 Stat. 116 (U. S. Comp. St. 1901, p. 1307), a Chinese person, not a laborer, was also excluded, who did not ob-

tain the certificate from the Chinese government provided for in that section. Section 2 of the act of 1888, if it be in force, is of the same character. It makes little difference whether or not a person so conditionally excluded is said to belong to excluded classes, for the fact is that he cannot get in, and it may perhaps be that section 9 now under consideration covers the case of one bringing in such a person. Upon that question I do not mean to decide, because it is, I think, unnecessary. It may be assumed to be the law, and I shall so assume it. Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (U. S. Comp. St. 1901, p. 1321), retains the use of the word "laborer," although it includes within that term certain occupations not within the colloquial meaning of the term. The convention of December 7, 1894 (28 Stat. 1210), also repeated the word, as have Act April 29, 1902, c. 641, 32 Stat. 176 (U. S. Comp. St. Supp. 1909, p. 473), and Act April 27, 1904, c. 1630, 33 Stat. 428 (U. S. Comp. St. Supp. 1909, p. 473). It is true that the title of the act of May 5, 1892, c. 60, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1319), is broader, using the word, "persons," and there is some language in the case of U. S. v. Chu Chee, 93 Fed. 797, 803, 35 C. C. A. 613, which might justify the conclusion that the excluded classes are larger than those of laborers; but if it be understood that the only absolutely excluded classes are laborers, and that others are excluded only conditionally on not producing a certificate, the language of the title and of the opinion is reconciled with the terms of the statutes themselves.

There seems to be no doubt on authority that a seaman is not a laborer. This has been held in a number of the decisions (Re Ah Kee [D. C.] 22 Fed. 519; Re Moncan [C. C.] 14 Fed. 44; Re Jam [D. C.] 101 Fed. 989); and it accords with the reasonable usage of words. A sailor does manual labor, but he is certainly not, under ordinary parlance, a laborer, either skilled or unskilled. Congress in Act 1893, § 2, recognized the word as not covering all those who do manual labor by specifically including certain occupations such as fishing, which are of the same kind as seafaring. I have no doubt on principle that a seaman is not included in the term. The purpose of the act was to prevent the entry of those who by their different standard of living should depress the wages in America of those who can least resist such competition. Of course, a nice economic speculation might suggest the same reason for applying the act to American seamen, but unhappily there are not many such anyway, and, besides, the act would not then be coterminous with its purposes, because most seamen coming here are on foreign ships and do not compete with our countrymen. Therefore I hold that under the act of 1882, and the subsequent acts, a seaman is not a laborer and so absolutely excluded.

Coming now to the penal provision in question, it is clear that section 9 of the act of 1888 only made penal the landing of Chinamen excluded by law, either absolutely, or conditionally. It is true that the words have literally a broader significance, but they would have been essential as an effective administrative measure, had the expected ratification of the treaty occurred. In that case all Chinamen would have been excluded, except those mentioned in section 2 of the act,

and the language of section 9 would have been necessary to cover the importation of any kind of Chinamen whatever, I cannot think it possible that Congress meant to punish as a crime the bringing in and landing of a person not excluded when he came here. It is quite true that all persons not laborers are provisionally excluded except such as may not fall within section 6 of the acts of 1882 and 1884, but if there be a case, as I think this is, which is neither conditionally nor absolutely excluded, it would be absurd to suppose that the statute meant to make that a crime, for the statute is certainly only directed against aiding and abetting an illegal entry. Its history and setting leave no doubt of that. If, therefore, a seaman be not a laborer, and if it be conceded that section 9 applies to bringing in any one conditionally excluded under section 6 of the act of 1882 and 1884, or section 2 of the act of 1888, assuming that that section ever became law, then the question comes down to this: Is a seaman required to obtain a certificate under section 6 of the acts of 1882 and 1884 or section 2 of the act of 1888, in order to go on shore when his ship touches at an American port? If those sections do not cover his case, there is no section which excludes him. Of course, I do not mean that the entry of a laborer under the guise of a seaman would not exclude him, or that his permanent severance from any ship would not change his character. I am assuming the case of a bona fide seaman, the member of a crew. If section 6 of that act does not apply, such a man is not excluded, for there is no law to exclude him. Now, I think that a reasonable interpretation of that section will satisfy any fair man that it could not have been intended to apply to seamen whose ships might touch at a port in the United States during a voyage, whether that port was the terminus or not. It is perhaps difficult to point out any specific language, for the conclusion depends more upon the section as a whole, construed with a just sense of its setting and its purposes. The practical difficulties of such an absurd requirement when applied to all ships of any nation shipping Chinese seamen require one of two alternatives—either that they are excluded altogether, or are not contemplated in the statute at all. If it be necessary to single out a word from the act, I should say that such a person was not one who was "about to come to the United States," and that the words mean, "come with the intention of remaining" at least for a period of time. Therefore I do not think that a Chinese seaman is within the meaning of section 9.

However, even if this were true, the indictment is faulty. In Taylor v. U. S., 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130, the Supreme Court said that "bringing into the United States" meant bringing with intent to leave. That was under the immigration acts, but the words there used were apparently taken from the act of 1882, and, in any case, they ought to have the same construction here as there. It is true that another alternative ground of decision was suggested in that case, but the language of the opinion is certainly strong enough not to be disregarded except by the court itself. It must be held to be the law, therefore, that the intent to leave is included in the terms "bringing" as used in this statute. If so, it is a specific intent, and must be

alleged in an indictment like any other specific intent which is the ingredient of a crime.

Again, if the theory be that the seaman, though not a laborer, was conditionally excluded, because he had no certificate, that fact should be stated. Qua seaman he is not excluded; qua Chinaman he is conditionally excluded, but the conditions are not in form provisos to a general excluding act. They are formally a part of the excluding clause itself. That is the usual test for conditions which must be negatived.

Demurrer sustained and indictment quashed.