### UNITED STATES ex rel. LUM YOUNG v. STUMP, Immigration Com'r.

(District Court, D. Maryland. February 16, 1923.)

**1. Aliens ⬅28—Chinese person, though not a laborer, must have required certificates.**

Under Act July 5, 1884, § 6 (Comp. St. § 4293), no Chinaman, even though he be not a laborer, may lawfully come into the United States, unless he has in advance provided himself with the certificates therein required.

**2. Aliens ⬅31—Rule of Immigration Commissioner, requiring bond to be given by alien seamen as condition of landing, authorized, and not unreasonable.**

Under Immigration Act Feb. 5, 1917, § 32 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), providing that no alien, excluded by any law or treaty and employed on board any vessel, shall be permitted to land, except for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor, a rule, promulgated under direction of the Assistant Secretary of Labor, requiring a bond of $500, conditioned for departure from the United States within 60 days, was authorized, and not unreasonable.

**3. Aliens ⬅31—Sailor excluded from admission not permitted to land, except under regulations authorized.**

Immigration Act Feb. 5, 1917, § 32 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), providing that no alien excluded by any law or treaty and employed on board any vessel shall be permitted to land, except for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor, applies to a sailor or seaman, and is not, as claimed, limited, when construed in connection with section 34 (section 4289¼s), to persons merely pretending to be seamen for the purpose of securing entrance into the United States.

Habeas Corpus. Petition for writ by the United States, on the relation of Lum Young, against Betram N. Stump, Commissioner of Immigration, Baltimore, Md. Writ discharged, and petition dismissed.

Henry L. Wortche and George Forbes, both of Baltimore, Md., for petitioner.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., for defendant.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROSE, Circuit Judge. The petitioner, a seaman of Chinese birth, nationality, and race, alleges that he is unlawfully held in custody on board the steamship Orenita in the harbor of this city until he shall furnish bond in the sum of $500, conditioned that he will depart from the United States within 60 days, as required by Chinese rule 7, subdivision 4a, promulgated April 29, 1922, by the acting Commissioner of Immigration under the direction of the Assistant Secretary of Labor.

The respondent says the rule in question is authorized by section 32 of the Immigration Act of 1917, 39 Stat. 895 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r). It provides:

"That no alien excluded from admission into the United States by any law, convention, or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States."

The petitioner claims that he does not belong to one of the classes of aliens excluded from the United States, nor is he within the meaning of the statute a person "employed on a vessel." He asserts that, as a sailor, he is not a laborer, as that word is used in the acts of Congress excluding Chinese laborers from the United States. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 128, 38 Sup. Ct. 28, 62 L. Ed. 189.

[1] To this it may be replied that no Chinaman, even though he be not a laborer, may lawfully come into the United States, unless he has in advance provided himself with certain certificates, which the petitioner does not claim to have. Section 6, Act July 5, 1884, 23 Stat. 116 (Comp. St. § 4293).

[2] Many of the decisions upon which the petitioner relies did not hold, as he contends that they did, that a Chinese seaman could lawfully come into the United States because he was not a laborer, and although he had not the certificates ordinarily requisite for admission. What they in fact ruled was that a seaman, whether of the Chinese or any other race, did not come into the United States against the intent of the immigration statutes when he merely landed here temporarily, with the purpose of speedily leaving our shores, either on the vessel which brought him in or upon some other. United States v. Jamieson (C. C.) 185 Fed. 165. All this, however, was before the enactment of section 32 of the act of 1917 hereinbefore quoted. The phraseology of that provision of law seems to have been aptly chosen to close the gap which the judicial opinions referred to had disclosed in the statutory barriers against the possible coming in of Chinese and other excluded immigrants. It can scarcely be questioned that in any ordinary use of language a sailor is a person employed on a vessel. Indeed, for very many years almost those very words have constituted the legal definition of a seaman:

"Every person, apprentices excepted, who shall be employed or engaged to serve in any capacity on board [a ship], shall be deemed and taken to be a seaman." R. S. § 4612 (Comp. St. § 8392).

287 F.—13

The petitioner nevertheless insists that, if any such construction be put upon section 32 of the Immigration Act of 1917, one of the purposes which Congress then had in mind will necessarily be defeated. It is argued that at that time the national Legislature was very anxious to protect American seaman against the competition of lower paid and badly treated sailors of other nationalities, and particularly against Asiatics, the poorest compensated of them all.

It is shown that the then Commissioner of Immigration had these considerations much in mind, and brought them to the attention of the committees of the two houses which had the legislation under consideration. It is perhaps inferable that the majority of the members of these committees were in general sympathy with his point of view, but it is certain that they did not altogether accept his suggestions as the wording of the section of the act in question. It is also demonstrated that both he and they knew that many aliens, among them a large number of Asiatics, who otherwise could not have gotten into this country at all in fact, succeeded in doing so because, coming here as sailors, they had contrived to escape attention and remained here permanently. Everybody was anxious to put a check to such practices, so far as that was possible, without unduly limiting the opportunities of alien seamen to leave the ship which brought them here, with or without the consent of its master, and in accordance with or in the teeth of their contract of employment on it.

The solution was sought, as the Senate committee reported (Senate Report 352, p. 19, 64th Congress, 1st Session, volume 2):

"By allowing the admittedly difficult task of so enforcing the immigration and seamen's laws, respectively, as to avoid conflict, and at the same time to prevent the privileges accorded under the seamen's laws from being used as a means of violating the immigration statute, to be accomplished by such appropriate and expedient regulations as might be necessary; it being realized that the details of this matter could not well be handled in a law, but must be worked out by the administrative officials carefully and adequately, especially as experience in the matter would probably demonstrate the necessity for modifying or extending the regulations from time to time, things which could not be accomplished if an attempt were made to cover the details of the matter in the statute itself."

At first the executive officials charged with this responsibility did not conceive it necessary to require a bond as a condition precedent to allowing a temporary landing, but their experience has apparently led them to a different conclusion. If the meaning and intent of sections 32 and 33 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼r, 4289¼rr) is as has been suggested herein, there is nothing unreasonable in providing that a bond must be given. In re Ah Kee, 22 Fed. 519; In re Jam (D. C.) 101 Fed. 989.

[3] The petitioner, however, contends that the words "alien * * * employed on board any vessel arriving in the United States from any foreign port or place," in section 32, however apt they might at times be to denote a seaman, cannot be held to do so therein, since such an interpretation of them would be inconsistent with the other sections of the act. He contrasts the provisions of this and the succeeding section 33 with those of section 34 (section 4289¼s). The first two,

he points out, apply to "persons employed on any vessel arriving," etc.; the latter to "alien seamen who shall land in a port of the United States"; and he argues that each description is to be understood as exclusive of the other. In his view, "person employed" is one who pretends to be a seaman, but is not in fact, and describes only those individuals who, for the purpose of securing entrance into the United States, falsely represent themselves to be sailors. He would limit the provisions of section 32, and possibly those of section 33, to such pretenders only. Section 34, which authorizes the arrest, within three years of his landing, of any alien seaman landing here, contrary to the provision of the act, for the purpose of bringing him before a board of special inquiry, with a view to possible deportation, he insists provides the remedy, and the only remedy, available against an alien sailor, who seeks to take up a permanent residence among us. It is impossible to accept such a contention. In section 33 "any alien employed on board any vessel arriving in the United States," etc., necessarily includes "the seaman himself," who by the same section may give notice of his desire to be discharged.

Moreover, it is not open to question that the words in section 35 (section 4289¼ss), "to have on board, employed thereon, any alien," etc., necessarily include bona fide sailors, as in section 36 (section 4289¼t) does the phrase "all aliens employed on such vessel."

I have carefully considered the able, elaborate, and painstaking brief submitted on behalf of the petitioner. It demonstrates that the Secretary of Labor and the Commissioner of Immigration in office at the time of the enactment of sections 32 and 33 believed it to be unnecessary and probably inexpedient at that time to require a bond from persons situated as the petitioner is; but it apparently shows nothing else, and certainly does not tend to the conclusion that the provisions of section 32 should not be interpreted to mean what they say, or that if, in 1922, the department was of the opinion that a bond should be required, it was without power to demand it.

I am aware that Judge Mayer, sitting in the Southern district of New York, held that a Chinese sailor in the situation of the petitioner could not be required to give bond as a condition precedent to landing; but I have been favored with a stenographic report, not only of what he said, but of all the proceedings before him. I find that the case was apparently argued upon the theory that there had been no material change in the statutory law since Judge Learned Hand decided U. S. v. Jamieson, supra.

To my mind that assumption is unfounded. Section 32 was, to my understanding, enacted to provide a means by which the executives might by appropriate regulations deal with such cases.

It follows that the writ must be discharged, and the petition dismissed.