### UNITED STATES ex rel. LUM YOUNG v. STUMP, Commissioner of Immigration.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1923.)

No. 2112.

1. **Aliens ⬳24—Chinese seamen temporarily coming on shore are not "laborers," within purview of Exclusion Acts.**

Chinese persons, who are bona fide seamen on vessels entering and leaving harbors of the United States, and temporarily coming on shore in a port, do not come to the United States as "laborers," and are not within the perview of the Chinese Exclusion Acts or treaties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laborer.]

2. **Aliens ⬳31—Regulation requiring Chinese seaman to give bond as prerequisite to shore leave held unauthorized; "to land."**

Immigration Act, § 32 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), providing that no alien excluded by any law or treaty and employed on board any vessel shall be permitted "to land," except for medical treatment or pursuant to regulations prescribed by the Secretary of Labor, does not apply to bona fide seamen, temporarily going ashore from their vessels in ports of the United States in course of duty or on shore leave, and does not authorize a regulation by the Secretary prohibiting such going ashore except under bond.

3. **Statutes ⬳219—Construction by high executive officers entitled to great consideration.**

The construction of a statute by those charged with its execution, particularly high executive officers, is entitled to great consideration.

Woods, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Habeas corpus, on the relation of Lum Young, against Bertram N. Stump, Commissioner of Immigration at Baltimore, Md. From a judgment denying the writ, petitioner appeals. Reversed.

For opinion below, see 287 Fed. 192.

Clement L. Bouve, of Washington, D. C. (A. Warner Parker, of Washington, D. C., and George Forbes and Henry L. Wortche, both of Baltimore, Md., on the brief), for appellant.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., for appellee.

Before WOODS and WADDILL, Circuit Judges, and McDOWELL, District Judge.

WADDILL, Circuit Judge. This is a habeas corpus proceeding involving the right of the appellant petitioner, of Chinese birth and nationality, and by occupation a bona fide seaman, employed as such on the American steamship Oritani of the Oriental Navigation Company's line, to go on shore leave temporarily while his ship was in the port of Baltimore, without first executing bond prescribed by the rules of the Secretary of Labor, conditioned for his leaving the country within 60 days from the date of his landing.

The hearing was upon the petition for a writ of habeas corpus, the writ, and the return of the respondent thereto. The facts were and are not seriously in dispute—that is, that the appellant petitioner was restrained of his liberty on board of the ship Oritani pursuant to subdivision 11 of regulation 10 of the Department of Labor; that he was a Chinaman born in Hongkong; that he was 35 years of age; that he had been at sea 16 years, and was a bona fide seaman, sailing in and out of the ports of the United States, including the port of Baltimore; that at the time of his detention, on November 6, 1922, he was on a voyage from the port of Boston, which commenced on the 28th of June, 1922; that he was detained by no other process, order, or judgment restraining him of his liberty; and that he belonged to no class disentitling him to entry into the United States, unless as a bona fide Chinese sailor he was prohibited from so doing.

The case turns entirely upon the interpretation of the statutes of the United States, and the rules and regulations passed in pursuance thereof, properly applicable. The respondent insists that the appellant was an alien excluded by the laws of the United States from entering the country, and was not entitled to citizenship, domicile, or residence therein, and that the statute and rules and regulations of which he complained were valid and lawfully enforced.

The question presented is by no means a new one, as the rights of alien seamen, including those of Chinese nationality, to shore leave, have frequently been the subject of review by the courts, and particularly where bona fide seamen, on voyages in and out of the harbors of this country, have been refused the right to land under the excluding or restrictive provisions of the treaty between the United States and China, or the Chinese Exclusion Acts, or of the provisions of the Emigration Acts of the United States, and not otherwise lawfully restrained from such leave or denied the same because of health conditions. Treaty with China, November 17, 1880, 22

Stat. 826; Act executing same of May 6, 1882, 22 Stat. 58, as amended July 5, 1884, 23 Stat. 115. A careful review of these decisions will be found to contain nothing opposed to the right of the appellant to the relief sought, but support the same. There is no case under the facts here, where the right to shore leave has been denied to a bona fide foreign seaman passing in and out of the harbors of the United States in the lawful exercise of his business. Seamen as such are not within any inhibited class, and from their business and calling are not persons seeking to gain admission to this country in the sense of becoming a part of the same, or citizens thereof; but, on the contrary, while engaged in their lawful avocations as seamen, navigating the seas, they seek merely the right to pass in and out of our ports and harbors. Our treaties and laws have with care prescribed those who may and who may not come within our borders, and too much pains cannot be taken to see that the restrictive provisions respecting vicious and undesirable incomers are rigidly enforced. But this should not cause us to stretch such laws, and the requirements imposed under them, in the effort to better our domestic conditions, so as to make them applicable to persons and things not within their purview.

[1] Reference may be made to some of the more important decisions supporting the views herein expressed. In one of the early cases on the subject, Judge Deady, of the Circuit Court of Oregon (14 Fed. 47) said:

"Nor do I think that the Chinese members of the crew of the Patrician are 'laborers' within the meaning of this act. True, their vocation is labor. But they are not brought here to remain and enter into competition with the labor of the inhabitants of the country. They labor upon the high seas in the navigation of a vessel engaged in the exchange of commodities between this country and other parts of the world." In re Moncan (C. C.) 14 Fed. 44, 47.

And Judge Addison Brown, of the Southern District of New York, about the same time (22 Fed. 520) said:

"Such persons do not come 'to the United States as laborers'—i. e., as laborers within the United States, in the sense of the act—and hence 'are not included in the limitations.'" In re Ah Kee (D. C.) 22 Fed. 519, 520.

Judge Toulmin, of the Southern District of Alabama, considering the same subject in a full and comprehensive opinion (99 Fed. 898) said:

"A consideration of the whole legislation on the subject of alien immigration, of the circumstances surrounding its enactment, and of the unjust results which would follow from giving such meaning to it as is here claimed for it, makes it unreasonable to believe that Congress intended to include a case like the present one. My opinion is that these statutes do not contemplate the exclusion of the crews of vessels which lawfully trade to our ports, and that they do not, in spirit or in letter, apply to seamen engaged in their calling, whose home is the sea, who are here to-day and gone tomorrow, who come on a vessel into the United States with no purpose to reside therein, but with the intention, when they come, of leaving again, on that or some other vessel, for the port of shipment or some other foreign port in the course of her trade. To hold that these statutes apply to aliens comprising the bona fide crews of vessels engaged in commerce between the United States and foreign countries would lead to great injustice to such ves-

sels, oppression to their crews, and serious consequences to commerce." United States ex rel. Andersen v. Burke, Collector (C. C.) 99 Fed. 895, 898.

And Judge Learned Hand, of the Southern District of New York, fully considering and reviewing the same subject (185 Fed. 167), said:

"There seems to be no doubt on authority that a seaman is not a laborer. This has been held in a number of the decisions. In re Ah Kee (D. C.) 22 Fed. 519; In re Moncan (C. C.) 14 Fed. 44; In re Jam (D. C.) 101 Fed. 989. And it accords with the reasonable usage of words. * * * I have no doubt on principle that a seaman is not included in the term. * * * Therefore I hold that under the act of 1882, and the subsequent acts, a seaman is not a laborer, and so absolutely excluded."

And (185 Fed. on page 168):

"If it be necessary to single out a word from the act, I should say that such a person was not one who was 'about to come to the United States,' and that the words mean 'come with the intention of remaining' at least for a period of time. Therefore I do not think that a Chinese seaman is within the meaning of section 9." United States v. Jamieson (C. C.) 185 Fed. 165, 167, 168.

[2] The meaning and effect of the Chinese Exclusion Acts, treaties, and conventions, and of our immigration laws, and the status of bona fide seaman passing in and out of our ports pursuant to the same, was fully considered in two able and comprehensive opinions of the Attorney General, in which the right to exclude such seamen was denied. 23 Op. Atty. Gen. 521, and 24 Op. Atty. Gen. 111.

The decisions of the Supreme Court of the United States are substantially to the same effect, and make it entirely clear that, in the view of that tribunal, the designation of a seaman, as such, does not include a laborer, either under the immigration laws, the Chinese Exclusion Laws, or our treaties and conventions with China. Mr. Justice Holmes, speaking for the Supreme Court (207 U. S. 125, 28 Sup. Ct. 54, 52 L. Ed. 130), said:

"The words must be taken in their literal sense. 'Landing from such vessel' takes place and is complete the moment the vessel is left and the shore reached. But it is necessary to commerce, as all admit, that sailors should go ashore, and no one believes that the statute intended altogether to prohibit their doing so. The contrary always has been understood of the earlier acts, in judicial decisions and executive practice. If we reject the ambiguous interpretation of 'to land,' as we have, the necessary result can be reached only by saying that the section does not apply to sailors carried to an American port with a bona fide intent to take them out again when the ship goes on, when not only there was no ground for supposing that they were making the voyage a pretext to get here, desert and get in, but there is no evidence that they were doing so in fact." Taylor v. United States, 207 U. S. 120, 125, 28 Sup. Ct. 53, 54 (52 L. Ed. 130).

The same court, speaking through Mr. Justice Clark (245 U. S. 125, 38 Sup. Ct. 29, 62 L. Ed. 189), said:

"The employment of the man to serve as a bona fide seaman on the Mackinaw is not questioned, and the allegations of the complaint negative any suspicion that the employment of him in China was a subterfuge adopted for the purpose of unlawfully securing his entry into the United States."

And at page 127 of 245 U. S., at page 29 of 38 Sup. Ct. (62 L. Ed. 189), said:

"Thus, neither in popular nor in technical legal language would the men employed on the Mackinaw be called or classed as 'laborers,' and such seamen are not brought 'into this country' to enter into competition with the labor of its inhabitants, but they come to our shores only to sail away again in foreign commerce on the ship which brings them or on another, as soon as employment can be obtained." Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 125, 127, 38 Sup. Ct. 28, 29 (62 L. Ed. 189).

The District Court, while apparently conceding the force of the decisions referred to, took, nevertheless, a contrary view, basing its opinion upon the fact that the provisions of the Immigration Act of February 5, 1917 (39 Stat. p. 874, c. 29. [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.]), should control in cases arising since its passage (sections 31 to 36, pp. 895, 896, being especially applicable to the question under consideration), and that under section 32 it was lawful for the Secretary of Labor to make the rule complained of, viz. subdivision 11 of Immigration Rule 10, dated April 29, 1922 (also known as subdivision 4a of the Chinese Rule 7), under and by virtue of which the appellant was lawfully detained on shipboard; in a word, that the language of said section 32, as to the exclusion of aliens from admission into the United States by any law, convention, or treaty regulating the immigration of aliens employed on board of any vessel arriving in the United States, was sufficiently broad to cover bona fide seamen as such, as well as ordinary laborers employed on board, and hence that appellant was not entitled to the relief prayed for, and accordingly denied him the right to habeas corpus.

Extracts from section 32, and of the rule issued in pursuance thereof, are as follows:

"Sec. 32. That no alien excluded from admission into the United States by any law, convention, or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States." * * *

"Rule 10. No alien who, by reason of any provision of the Chinese Exclusion Laws or of the latitudinal and longitudinal clause of section 3 of the Immigration Act is inadmissible to the United States for purposes of residence shall, after having arrived at a mainland port of the United States from any foreign port or place as a seaman, be permitted to land at such port except upon executing and filing with the immigration officer in charge thereat a bond, with approved security, in the penal sum of $500, conditioned that such alien seaman will depart from and out of the United States within 60 days from the date of his conditional landing. * * *"

We are unable to concur in the conclusions of the court below, either as to the meaning of section 32 of the Immigration Act, or as to the authority of the Secretary of Labor, under the rule issued pursuant thereto to detain on shipboard, a bona fide Chinese seaman coming temporarily into the ports of the United States, following his vocation and calling, and without the purpose to remain therein.

The meaning of section 32 of the Immigration Act seems to be too plain to admit of serious doubt or cavil; that is, it has application to aliens excluded from admission into the United States, whether employed on board of any vessel arriving in the United States from for-

eign ports or places or not, and in no manner affects those not thus prescribed, and that as to persons therein included and affected, that they may only land (a) temporarily for medical treatment; or (b) pursuant to regulations prescribed by the Secretary of Labor, providing for the actual removal or deportation of such aliens from the United States.

What reason would there be for the ultimate removal or deportation of an alien seaman from the United States, in the case of a bona fide seaman not seeking admission, but passing temporarily in and out of the harbors of the country, following his lawful calling? This provision makes it clear that its purpose was to insure the deportation of those disentitled to come into the United States, who had done so and were seeking to remain therein.

It is equally manifest that subdivision 11 of rule 10, above cited, does not contemplate that bona fide seamen temporarily coming into this country should be deported or molested. It is as to aliens, who by certain provisions of law were inadmissible to come into the country for the purpose of residence, that they should, as a condition to landing, be required to execute to the proper immigration officer bond with approved security in the penal sum of $500, providing for their deportation within 60 days of their landing. This whole plan shows that it has no application to a bona fide seaman as such, seeking no admission into the country, but merely to temporarily land for shore duty in pursuance of his calling, on a voyage taking him in and out of the country.

Section 33 of the Immigration Act is relied on in support of the interpretation sought to be placed on section 32. A careful examination of that section makes the meaning entirely clear that it refers to the paying off and discharging of alien seamen not permitted to land, or remain permanently in the United States, under any law, treaty, or convention, and that as to this class the Secretary of Labor may prescribe regulations as to the manner of their coming in and reshipping out of the country.

A careful review of sections 31 to 36, inclusive, of the Immigration Act, will demonstrate that, taking them separately or as a whole, they do not affect the right of shore leave of a bona fide seaman in the position of appellant. The purpose of the several sections is plain, and intended generally to prohibit and deny the right of admission of persons therein specified to the United States, and for their regulation and control while in and for their departure therefrom. The appellant belongs to no such class, seeks no admission to the country or to remain therein, but merely bona fide and in good faith to exercise his lawful right of coming into and going out of the harbors of the country, in contravention of no law, treaty, rule, or regulation affecting him.

[3] We may say, in passing, that we are not uninfluenced in reaching the conclusion we have by the fact that sections 32 and 33, upon which reliance is placed by the court below, have been in operation some six years, and not until a year ago, April, 1922, was the construction made contended for. The Secretary of Labor of the preceding administration made no such claim, nor did the present Secretary until he had acquiesced in the rule of his predecessor for over a year. The

construction of a statute by those charged with its execution, particularly high executive officials, is entitled to great consideration. Union Ins. Co. v. Hoge, 21 How. 35, 16 L. Ed. 61; United States v. Johnson, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389; United States v. Finnell, 185 U. S. 236, 22 Sup. Ct. 633, 46 L. Ed. 890; Allen v. United States, 26 App. D. C. 8, affirmed 203 U. S. 476, 27 Sup. Ct. 141, 51 L. Ed. 281; United States v. Cerecedo, etc., 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821; 36 Cyc. (1910 Ed.) pp. 1140, 1141.

In the opinion of the court below, and in argument of the case, reference was made to the decision of United States Circuit Judge Julius M. Mayer, sitting in the District Court of the Southern District of New York, in United States ex rel. Hochung v. Tod, Commissioner of Immigration, decided August 10, 1922. No formal opinion was filed by Judge Mayer, though the order entered by him carrying out his decision as set out in the brief of counsel is as follows:

"This motion having come on to be heard before this court at a stated term thereof, and Clement L. Bouve, Esq., appearing for the relator, and Morris Streusserand, Esq., Assistant United States Attorney, appearing for the Commissioner of Immigration, it not being disputed by the government that the relator, Ho Chung, is a bona fide seaman, and is not suffering from any disabilities under the Immigration Law, and that therefore as such Chinese seaman he is not within any prohibitions of the Chinese Exclusion Law, as far as landing in this country for shore leave and in pursuance of his calling is concerned; and further, in view of the decision of Judge Hand, rendered in this court in the Jamieson Case, 185 Fed. 165, holding that a bona fide Chinese seaman is not excluded under the Chinese Exclusion Laws and treaty from landing temporarily in pursuit of his calling as such seaman; and further, in view of the fact that section 32 of the Immigration Act, on which the government depends for claim of its authority in the Secretary of Labor to issue his amendment to rule 10 of the Immigration Laws and rule 7 of the Chinese Laws, dated April 29, 1922, does not constitute authority for the issuance of such amended regulations: It is ordered that the writ be sustained for lack of power in the Secretary of Labor to issue such regulation, and the relator is hereby ordered released from custody in order to enable him to land temporarily for the purpose of pursuing his calling as a bona fide seaman."

From this order it will be seen that Judge Mayer takes the same view of the subject under consideration as we do.

Our conclusion upon the whole case is that the appellant, a bona fide seaman, touching temporarily at an American port, was entitled to shore leave, and to land in pursuit of his calling—neither the treaty with China nor the Chinese Exclusion Act including such seamen in their exclusive and restrictive provisions—and that the appellant was entitled to discharge under the writ of habeas corpus prayed for.

The decision of the lower court will be reversed.

Reversed.

WOODS, Circuit Judge (dissenting). Section 32 of the Immigration Act of February 5, 1917 (39 Stat. p. 895), provides:

"That no alien excluded from admission into the United States by any law, convention or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations pre-

scribed by the Secretary of Labor, providing for the ultimate removal or deportation of such alien from the United States."

Under this statute the Secretary of Labor issued the following rule as to the landing of Chinese seamen:

"Rule 10. No alien who, by reason of any provision of the Chinese Exclusion Laws or of the latitudinal and longitudinal clause of section 3 of the Immigration Act, is inadmissible to the United States for purposes of residence shall, after having arrived at a mainland port of the United States from any foreign port or place as a seaman, be permitted to land at such port except upon executing and filing with the immigration officer in charge thereat a bond, with approved security, in the penal sum of $500, conditioned that such alien seaman will depart from and out of the United States within 60 days from the date of his conditional landing. * * *"

The question to be decided is whether the rule is authorized under the statute. Lum Young, a Chinese seaman on the steamship Oritani, in the port of Baltimore, having failed to give the bond of $500, was detained on the ship and refused the privilege of landing in the United States. Thereupon he sued out a writ of habeas corpus. The District Judge dismissed the petition.

Not only Chinese laborers, but all Chinese, are excluded from admission into the United States who do not produce the certificate required by section 6 of the Act of March, 1882, as amended by Act of 1884, 23 Stat. 116 (Compiled Stat. § 4293). Seamen employed in foreign commerce are not laborers, within the meaning of the federal statutes. Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 38 Sup. Ct. 28, 62 L. Ed. 189; United States v. Jamieson (C. C.) 185 Fed. 165. Chinese seamen, although not laborers, are aliens excluded from "admission" into the United States along with other Chinese, except upon presentation of the certificate required by the Act of 1884 for the admission of any Chinese.

Before the Act of 1917 Chinese seamen were permitted to land temporarily at the vessel's port without the statutory certificate, because such landing was held not to be "admission" into the United States within the meaning of the statute. The clearly expressed purpose of section 32 of the Act of 1917 was to change the law, and forbid all aliens excluded from "admission"—including Chinese seamen, aliens "employed on board any vessel"—to "land" even temporarily, except for medical treatment or in pursuance of regulations prescribed by the Secretary of Labor. This, it seems to me, is the plain meaning of the statute. Any other construction of section 32 of the Act of 1917 would make the section of no effect as to the very subject to which it relates, namely, prevention of the landing of aliens "excluded from admission" employed on vessels, except on the conditions prescribed by the statute.

I am unable to see that this construction is inconsistent with any other section of the act or with any provisions of the Seamen's Act. Whatever other purpose may have been developed in the reports of the committees and the discussions in Congress, this intention of the Immigration Act of 1917 is very plainly expressed in the following extract from Senate Report 355, Sixty-Third Congress, upon the bill then pending :

"It is essential, if violations of the Immigration Law by aliens coming in the guise of seamen are to be avoided, especially in the case of Asiatic aliens now so extensively employed on vessels entering our ports, that the Secretary of Labor shall be authorized to enforce regulations insuring the departure, with their vessels or otherwise, of those who land, ostensibly, at least, for temporary purposes."

The meaning of the statute seems to me plain from its language, especially in view of the evil which it was obviously intended to prevent. I think the judgment should be affirmed.