## MASENORI TANAKA v. WEEDIN, Immigration Com'r.

(Circuit Court of Appeals, Ninth Circuit.   June 2, 1924.)

No. 4132.

Aliens ⬳53—Seaman, forming intention to desert before leaving ship, cannot claim immunities granted to alien seamen.

Where a seaman forms intention to desert before he leaves ship, after desertion he cannot claim rights and immunities granted to alien seamen as regards deportation, under Immigration Act 1917, §§ 32, 34 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼r, 4289¼s), and Immigration Rules 10, 11, though an alien seaman's identification card was issued to him.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Application for writ of habeas corpus by Masenori Tanaka against Luther Weedin, Commissioner of Immigration. From an order denying his application, petitioner appeals. Affirmed.

Winter S. Martin, of Seattle, Wash., for appellant.

Thomas P. Revelle, U. S. Atty., and Matthew W. Hill, Asst. U. S. Atty., both of Seattle, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Appellant is a Japanese alien who was hired as a seaman on the Japanese steamship Africa Maru. At Tacoma, Wash., in 1919, he deserted, and worked at Fairfax, Wash., until some time in April, 1923, when he was arrested. The immigration authorities, after a hearing, found that at the time appellant entered the United States he was a person likely to become a public charge, and that he had entered in violation of rule 11 of the Immigration Rules. Upon appeal the Secretary of Labor affirmed the recommendation for deportation and warrant was issued. Application for writ of habeas corpus was denied by the District Court, and from the order of denial appeal was taken.

The real question in the case turns upon the effect of rule 11, Immigration Rules, which concern laborers from countries which grant limited passports. The rule refers to the proclamation issued in February, 1913, by the President of the United States, wherein the President, acting under the authority of the act to regulate the immigration of aliens, approved February 20, 1907, orders alien laborers who may have passports issued by certain foreign governments, and who have come to the United States to the detriment of labor conditions therein, to be refused permission to enter the continental territory of the United States, and also provides that the proclamation does not relieve the alien from examination under the general provisions of the law, and that if a laborer, within the class referred to in the proclamation, applies for admission and presents no passport, it shall be presumed that when he left his own country he did not possess a passport entitling him to come

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the continental territory of the United States. The rule (section 5) defines the term "laborer," for practical administrative purposes, as referring primarily to persons whose work is essentially physical.

Appellant did not possess a passport, but at the time of his desertion he had an alien seaman's identification card, issued by immigration officers at Tacoma on October 13, 1918, under rule 10 of the Immigration Rules. This card was retained by the captain of the ship, and under the testimony such cards are issued for purposes of identification in checking the crew on the entry and departure of the ship. ·

Section 32 of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), provides that no alien excluded from admission into the United States by any law or treaty regulating immigration of aliens, or employed on board any ship arriving in the United States from any foreign port, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States.

Tanaka had what is called a "seaman's book." It was not put in evidence, but was described as a book issued by the Japanese government to every applicant for a position as a seaman in Japan. It is evidently used to identify the holder as a subject of Japan, and as a seaman, and contains a brief recital of the facts as to the holder's past history. According to Tanaka's evidence, he surrendered his seaman's book to the master of the ship, and it was in his possession at the time he deserted.

Section 34 of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼s), provides that an alien seaman, who lands in a port of the United States contrary to the provisions of that act, shall be deemed to be unlawfully in the United States, and shall at any time within three years thereafter, upon warrant, be taken into custody and brought before a board for examination as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported. Rule 10 of the Immigration Rules applies to the enforcement of the acts with respect to alien seamen. Section 1 defines "seaman" as including every person signed in the ship's articles and employed in any capacity on board any vessel arriving in the United States from any foreign port or place.

Keeping in mind the foregoing résumé of the statutes, we are met with the contention of appellant that under the decision in Ellis v. United States, 206 U. S. 246, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589, Tanaka's status is to be fixed by section 34, and not section 32, of the laws, or, as stated in the brief of counsel for Tanaka:

"It is the expressed intention, under this rule 10, to classify and treat seamen under section 34 and rule 10 in a manner wholly different from other aliens." ·

In the Ellis Case, cited, the court held that seamen were not laborers or mechanics, within the meaning of the act prohibiting the working of laborers or mechanics more than eight hours a day. The statutes considered by the court were entirely different from those which obtain in this appeal.

However, as a direct authority we cite our decision in Akira Ono v. United States, 267 Fed. 361. There Ono applied for writ of habeas corpus to obtain release from custody in deportation proceedings. Ono was a coal passer on a ship which arrived at Galveston, Tex., from a foreign country. On arrival he deserted. He had no passport, and at the time of his arrest, although five years had not elapsed, more than three years had gone by after his entry into the United States. Upon careful consideration of the pertinent sections of the Act of February 20, 1907 (an act to regulate immigration of aliens into the United States, 34 Stat. 898), and of the fact that in pursuance of that act the President, on March 14, 1907, issued his proclamation, it was held that Ono was, by the express provisions of section 19 of the Act of February 5, 1917 (39 Stat. 874, 889; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), subject to deportation at any time within five years of the time of his entry, basing the ruling upon the view that Ono belonged to a class, to wit, that of unskilled laborers, denied the right of entry into the United States by virtue of the Act of February 7, 1907, and the presidential proclamations issued pursuant to the provisions of the act.

It is our opinion that section 34, supra, imposing a limitation period of three years with respect to alien seamen, cannot apply, for Tanaka was not a seaman at the time of his arrest, or his hearing, or thereafter. He was a worker in a lumber camp. Having formed the intention to desert before he left the ship, after his desertion he cannot claim rights and immunities granted to alien seamen. In United States v. Crouch (C. C.) 185 Fed. 908, Judge Chatfield referred to the use of the word "seaman" in the Act of Congress of September, 1888, amended by 27 Stat. 25, and 28 Stat. 7 (Comp. St. § 4320), to prohibit the coming of Chinese laborers to the United States, saying that the word "seaman" has reference to an occupation recognized by the law and the cases as a continuous occupation, and as covering the future, unless it is terminated by something contrary to a continuation of a professional calling which the word implies, and pointed out that application of the statute referred to should depend upon the purpose for which the landing from the ship was made, and that the change from the status of a seaman to that of immigrant occurs when one attempts to come into the United States as an immigrant for the sake of remaining as a resident, and that in such case judgment should be had under the immigration laws, rather than according to what the man had been before he changed his status by forming the new intent. United States v. Jamieson (C. C.) 185 Fed. 165.

The alien seaman's identification card issued to Tanaka by the United States agents, acting under rule 10 of the Immigration Rules, is of no avail where the alien seaman landed with preconceived intent to desert his ship and his calling. Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130, is not in conflict with the Ono Case. Taylor was convicted under the Immigration Act of March 3, 1903 (32 Stat. 1213, 1217), for having willfully permitted an alien to land at a place other than that designated by the immigration officers. The court held that the conviction could not stand, because it appeared that the sailor deserted on shore leave, and without any evidence going to show bad faith on the part of the master.

We therefore hold that section 34 has no application where there is a violation of rule 11, or of any of the sections of the Act of February 5, 1917, other than those referring to the landing of alien seamen, and we agree with the view that rule 11 became relevant.

No error of law appearing, the order of the District Court is affirmed.