### UNITED STATES ex rel. FANUTTI v. FLYNN, District Director of Immigration.

(District Court, W. D. New York. January 7, 1927.)

1. **Aliens** ⟷46—That alien has applied for naturalization does not enlarge his right to enter or remain in United States.

That alien has declared his intention to become a citizen and applied for naturalization does not enlarge his right to enter or remain in United States.

2. **Aliens** ⟷46—Return of alien, after unlawful residence for five years, from temporary visit to Canada, held new entry.

That an alien had resided unlawfully in this country for five years did not exempt him from operation of the Immigration Act on his return from a temporary visit to Canada, which was a new entry, where he obtained no permit to re-enter under Immigration Act 1924, § 10 (Comp. St. § 4289¾e), nor did the fact that he had been permitted to enter after previous visits make any difference.

Habeas Corpus. Petition by the United States, on relation of Sereno Fanutti, against William Flynn, District Director of Immigration at Buffalo, N. Y., for writ of habeas corpus. Writ dismissed.

Lipsitz & Lipsitz, of Buffalo, N. Y., for petitioner.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (Samuel J. Dickey, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

HAZEL, District Judge.' The relator, an Italian subject, entered the United States at the port of New York, on January 31, 1920, before the Quota Act (Comp. St. §§ 4289½–4289½dd) was passed by Congress, destined to Hamilton, Ontario, Canada, where he remained four days, and then came to the United States, at Buffalo, after being examined, as he claims, by an immigration inspector. At this time he was vaccinated (see vaccination certificate in evidence) at the immigration office and claims he was permitted to enter. He was not required to pay a head tax, and testified that he informed the inspector that he intended to remain in Buffalo. No record, however, of his admission into this country, or his examination, have been found on file in the immigration office.

On June 23, 1921, he declared his intention to become an American citizen, and he testified that thereafter, at times around Christmas, he visited Hamilton, Canada, and, on his return, exhibited to the inspector his declaration of citizenship and letter of identification from his employer, and was permitted to enter. No immigration visé, he claims, was required of him at such times. In October, 1924, he made application for naturalization, and was asked by the naturalization examiner if he had paid a head tax on entry to the United States, and, replying in the negative, was directed to go to the immigration office to pay his head tax, but it was not accepted; he being informed that he would be later advised. On December 25, 1925, he again went to Canada, and, after a short stay (three days), sought re-entry, but was later detained on the ground that he had no unexpired consular immigration visé, and, consequently, was examined under oath by the immigration officer.

[1] The warrant of deportation, which is based upon his last entry, recites that the relator entered the United States without inspection, and that he was a person likely to become a public charge at the time of his entry. There is insufficient testimony to support the latter finding; but, as to the former, the deportation is supported by authority. It makes no difference that the relator had declared his intention to become a citizen, and had applied for naturalization,

17 F.(2d)—28

since Congress has made no exception in such cases. U. S. ex rel. Bauder v. Uhl (C. C. A.) 211 F. 628; Guimond v. Howes (D. C.) 9 F.(2d) 412.

The primal question submitted is whether the provisions of the Immigration Act in relation to admission and deportation applies to an alien who has been domiciled in this country more than five years, and leaves on a temporary visit to a foreign country, with the intention of returning again; he having previously entered after similar temporary absentations.

The government contends that it is settled law that re-entry, such as that with which we are dealing, is prohibited under sections 16–19 of the Immigration Act of February 5, 1917 (Comp. St. §§ 4289¼i–4289¼jj), which substantially provides that aliens shall be required to state, under oath, the purpose for which they come, and give such other information as will aid in determining whether they belong to any of the excluded classes, and aliens who enter without inspection are subject to exclusion at any time within three years after entry.

The relator, in opposition, contends that, even though he failed to exhibit an immigration visé on his original entry, or subsequent entries after temporary visits to Canada, his vaccination certificate, issued by the immigration officer, strongly supports his assertion that he was examined and permitted to enter, thus indicating a compliance with the requirements of the statute.

Upon this point the inspector ruled that, since there was no record in the immigration office of the alien's admission, he had not maintained the burden of proof that he had lawfully entered, and accordingly he was subject to exclusion. I am precluded from disagreeing with this finding, inasmuch as there was some evidence to sustain it.

There is nothing in Re Spinnella (D. C.) 3 F.(2d) 196, cited by counsel for the relator, bearing upon his asserted legal entry. The aliens, in that case, had previously been lawfully admitted, and were returning from a temporary visit to Italy. The evidence showed that they were entitled to nonquota visés on their passports; but, being out of blank forms, the American consul in Italy stamped the visés as having been issued after warning, and noted thereon that a limited visé was issued in lieu of a nonquota visé, and the learned court applied the equitable principle that equity regards as done that which ought to be done, and since, in his opinion, it evidently was the intention of the

consul to issue a nonquota visé, he regarded the visé as of the nonquota class and sustained the writ. The suggestion that equities have arisen from relator's possession of a vaccination certificate and from his previous entries without having a consular visé is untenable.

[2] It is next contended that, since the relator was domiciled in this country for a period of five years immediately prior to his last departure to Canada, that he is not now subject to deportation. In the Lackides Case (D. C.) 10 F.(2d) 980, cited on this point, the alien entered before immigration visés were required by the act of 1924 (Comp. St. § 4289¾ et seq.), and therefore the court held that he was not liable to deportation within the three-year period. It was not a re-entry case.

In view of the relator's unlawful entry in February, 1920, without inspection, as the immigration officer decided, the principal question with which we are now concerned is whether his re-entry from Canada required an immigration visé, as provided by the Immigration Act of 1924. He made no application under section 10 (Comp. St. § 4289¾e) for permission to re-enter the United States after his temporary visit, and indeed he probably would not have obtained one, since the act provides that the alien must show, as a condition of giving permission, that he has been legally admitted to the United States and that his application is made in good faith.

Having resided unlawfully in this country for a period of five years, and continuing an alien, his status was not changed. He did not thereby become exempt from the operation of the Immigration Act. His departure and absence subjected him to the act relating to the exclusion and deportation of aliens in the same manner as though he had no previous domicile in this country. It was a new entry, and he became subject to deportation from the date of the prohibited entry, viz. his last entry. The case of Lewis v. Frick, 233 U. S. 291, 34 S. Ct. 488, 58 L. Ed. 967, is clear authority for this holding.

It makes no difference that he could have remained here, assuming such to have been the fact, had he not departed and sought to return. In the Frick Case, supra, the alien, it is true, sought to re-enter accompanied by a prostitute, who was subject to deportation; but the holding of the Supreme Court excluded the relator, though he had lawfully entered the United States more than three years before the re-entry. It has been clearly held, in numerous cases, that where an alien has remained in this country, after first entering unlawfully, for a longer period than the time specified in the act, and then makes a temporary visit abroad, the period of limitation for deportation begins at the time of re-entry. Guimond v. Howes (D. C.) 9 F. (2d) 412; U. S. ex rel. Ciccerelli v. Curran, 12 F.(2d) 394. The last-mentioned case was decided by the Circuit Court of Appeals for this circuit in March, 1926, and it was there held that, where an alien had been convicted of assault second degree, a crime involving moral turpitude, committed within five years of his last entry into the United States, he was subject to deportation, regardless of the fact that the original entry was more than five years before the commission of the crime. The principle of these adjudications applies to this case and is binding on this court.

The relator has had a fair hearing, and since the merits were decided against him, there is nothing open to this court for consideration warranting interference by habeas corpus. U. S. ex rel. Fink v. Tod (C. C. A.) 1 F.(2d) 246.

The writ is dismissed, and the relator remanded for deportation. So ordered.