HURST v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. January 14, 1929.

No. 5436.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Geo. M. Naus, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. In September, 1923, the appellant, a British seaman in the British navy, deserted his ship at the port of San Francisco and entered the United States, where, following industrial pursuits, he remained until an undetermined date in May, 1924, when he made a trip into Mexico, returning on the same day, without having presented himself for examination. Thereafter he remained continuously in the United States. On September 21, 1927, the Secretary of Labor issued a warrant for his arrest on the ground that in May, 1924, he entered the United States without being admitted and charged to the quota allotted to the country of which he was a native for the fiscal year ended June 30, 1924. The decision of the Secretary was that the appellant was never lawfully admitted for permanent residence, and that as, on the occasion of his last entry, he was not charged to the quota of his native country, and was not admissible as exempt from quota requirements, the charge in the warrant was fully sustained, and the order of deportation was ·affirmed.

The appellant's contention that, at the time of his re-entry in 1924, he was not subject to the quota restrictions, because he was an alien returning from a temporary visit abroad, and that he was such a returning alien, since he had merely taken a little pleasure trip to Tia Juana, is not sustainable. He had never been lawfully admitted to the United States, nor was he an immigrant returning from a temporary visit abroad, within the provisions of the immigration laws. From the time when he first entered, and up to the time of his visit abroad, he could claim none of the rights and immunities granted to alien seamen. He ceased to be an alien seaman, and was subject to deportation, at the moment when, without the intention to reship, but with the intention to reside unlawfully in the United States, he deserted his ship. Masenori Tanaka v. Weedin (C. C. A.) 299 F. 216; Ex parte Marchant (D. C.) 3 F.(2d) 695; United States v. Flynn (D. C.) 21 F.(2d) 695. When he went abroad, he had no status qualifying him to obtain a permit for a temporary visit, nor could he have registered as a domiciled resident of the United States intending to return to the United States; for he was unlawfully within the United States.

The question arises whether or not the act approved May 26, 1924 (8 USCA § 201 et seq.), is applicable here. It is shown that the appellant re-entered the United States in May, 1924, but whether before or after May 26 is not definitely fixed by the proof. If that act was applicable, the appellant was clearly not entitled to re-enter, because he could not show, as required thereby, that he was an immigrant "previously lawfully admitted to the United States" and was returning from a temporary visit abroad. Turning to the Act of 1924, 8 USCA § 204 (b), we find that it makes all aliens returning from a temporary visit abroad nonquota emigrants. We think the returning aliens there referred to are aliens who had been lawfully domiciled in the United States. Such is the construction placed upon the act by the Secretary of Labor, in providing by rule 2a that temporary absence shall be construed to mean "an absence in any foreign country without relinquishment of domicile," thus clearly importing that the domicile in the United States must have been lawful. No domicile in the United States can be established by an alien whose original entry was unlawful, United States v. Flynn (D. C.) 17 F.(2d) 432; Domenici v. Johnson (C. C. A.) 10 F.(2d) 433; Ex parte Di Stephano (D. C.) 25 F.(2d) 902.

But whether the appellant's right to re-enter be measured by the act of 1924, or

by the act of 1921, the result is the same. The act of 1921 is not the only statute which affected the question of his right to re-enter. That statute is not a substitution for the Act of February 5, 1917, 8 USCA § 136, which in subdivision (o) exempts from the operation of the illiteracy test "all aliens who have been lawfully admitted to the United States and who have resided therein continuously for five years and who return to the United States within six months from the date of their departure therefrom," and in subdivision (p) provides: "Aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe." The act of 1917 and the act of 1921 are to be construed in pari materia, in determining the question here involved. United States v. Commissioner of Immigration (C. C. A.) 285 F. 295, 298; Commissioner of Immigration v. Gottlieb, 265 U. S. 310, 44 S. Ct. 528, 68 L. Ed. 1031; United States v. Tod (C. C. A.) 297 F. 214. Under subdivision (p), above quoted, the Secretary of Labor proclaimed a rule that returning aliens must give "convincing proof of domicile in the United States for seven consecutive years, and of departure therefrom with the intention of returning thereto." The appellant, who had resided in the United States but eight months, was excluded from re-entry by the act of 1921. ▮ The appellant's re-entry was a new entry. The statutory limitation time for his deportation began to run from the date thereof. Ex parte Parianos (C. C. A.) 23 F.(2d) 918; Guimond v. Howes (D. C.) 9 F.(2d) 412. And he was deportable under 8 USCA § 155, which provides that any alien of any of the excluded classes is deportable within five years after entry. His departure and temporary absence subjected him to exclusion and deportation in the same manner as though he had no previous domicile in this country. United States v. Flynn (D. C.) 17 F.(2d) 432. The appellant, in contending that his deportation was barred after three years, relies upon section 34 of the Immigration Act of 1917 (8 USCA § 166), which provides: "Any alien seaman who shall land in a port of the United States contrary to the provisions of this act shall be deemed to be unlawfully in the United States, and shall, at any time within three years thereafter, upon the warrant of the Secretary of Labor, be taken into custody and brought before a board of special inquiry for examination as to his qualifications for admission to the United States, and if not admitted said alien seaman shall be deported."

We cannot agree that section 34 applies in any of its provisions to an alien who intentionally deserts his ship in a port of the United States, abandons his calling as a seaman, and surreptitiously enters the country with intention to remain and engage in other pursuits. In enacting section 34 of the act of 1917, we think the purpose was to include as alien seamen only those aliens who in the capacity of seamen had been discharged in ports of the United States, or who under prescribed regulations had been permitted to land temporarily in the United States, but who had failed to re-ship, or to return to their vessels after the expiration of their permission to remain ashore, and that it is not conceivable that, in enacting the immigration laws, Congress intended to favor alien seamen, or offer them inducements to desert their ships and change their occupation, or to condone their unlawful entry into the United States. The case differs from Nagle v. Hansen, 17 F.(2d) 557, decided by this court, in that the alien there sought to be deported came into the United States as a sailor, was allowed to enter as being "admitted in transit" and intending to reship foreign, and at no time relinquished his occupation as a seafaring man.

We think that the appellant entered the United States in violation of the Quota Law of 1921 (42 Stat. 5), and that within the meaning of 8 USCA § 155, he was an alien who at the time of his re-entry was a member of one of the classes excluded by law, and that his case does not come within the provision of that portion of the section which limits to a period of three years after entry the deportation of aliens "who shall have entered the United States by water at any time or place other than as designated by immigration officials," or by land, etc., or who enter "without inspection," for the classes of aliens referred to in that provision are evidently persons who at the time of entry are such as are entitled to enter, and not persons who are excluded by any provision of the law.

The judgment is affirmed.